Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/27/2020 12:09 AM CST

AVG Partners I, LLC, also known as AVG Partners, appellee and cross-appellant, v. Genesis Health Clubs of Midwest, LLC, and 24 Hour Fitness USA, Inc., appellants and cross-appellees.

___ N.W.2d ___

Filed September 4, 2020.    No. S-19-857.

1. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.
2. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.
3. **Jurisdiction: Appeal and Error.** The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court.
4. **Directed Verdict: Appeal and Error.** A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.
5. ____: ____. In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.
6. **Motions for New Trial: Appeal and Error.** An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion.
7. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the

trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

8. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.

9. **Prejudgment Interest: Appeal and Error.** Awards of prejudgment interest are reviewed de novo.

10. **Verdicts: Appeal and Error.** When reviewing a jury verdict, the appellate court considers the evidence and resolves evidentiary conflicts in favor of the successful party.

11. **Verdicts: Juries: Appeal and Error.** A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is competent evidence presented to the jury upon which it could find for the successful party.

12. **Courts: Appeal and Error.** Appellate review of a district court's use of inherent power is for an abuse of discretion.

13. **Standing: Jurisdiction: Proof.** A party invoking a court's or tribunal's jurisdiction bears the burden of establishing the elements of standing.

14. **Standing: Jurisdiction.** Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf.

15. **Leases: Words and Phrases.** A lease is a species of contract for the possession and profits of land and tenements, either for life or for a certain period of time, or during the pleasure of the parties, and the essential elements of a contract must be present.

16. **Actions: Landlord and Tenant.** In an action for rent, it is sufficient to show a contract with plaintiff and a holding under him or her; plaintiff's title or right of possession is immaterial.

17. **Rules of Evidence: Proof.** There is no general rule of evidence that a party must produce the best evidence which the nature of the case permits.

18. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

19. ____: ____: ____. Erroneous admission of evidence does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact.

20. **Prejudgment Interest.** Neb. Rev. Stat. § 45-104 (Reissue 2010) applies to four types of judgments: (1) money due on any instrument in writing; (2) settlement of the account from the day the balance shall

be agreed upon; (3) money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof; and (4) money loaned or due and withheld by unreasonable delay of payment.

21. **Rules of the Supreme Court: Pleadings: Prejudgment Interest: Notice.** Compliance with Neb. Ct. R. Pldg. § 6-1108(a) is not determinative where entitlement to interest is based on statute and the adverse party had notice and an opportunity to be heard prior to judgment.

22. **Leases: Prejudgment Interest.** Interest under Neb. Rev. Stat. § 45-104 (Reissue 2010) can be recovered on a lease, although the statute's provisions may be superseded by terms set forth in the lease.

23. **Claims: Prejudgment Interest.** Whether a claim is liquidated or unliquidated is immaterial with respect to a litigant's ability to recover prejudgment interest under Neb. Rev. Stat. § 45-104 (Reissue 2010).

24. **Rules of Evidence: Words and Phrases.** Authentication or identification of evidence is a condition precedent to its admission and is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

25. **Rules of Evidence: Proof.** A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity.

26. **Rules of Evidence: Records: Words and Phrases.** The term "data compilation" in Neb. Rev. Stat. § 27-803(5)(b) (Reissue 2016) is broad enough to include records furnished by third parties with knowledge of the relevant acts, events, or conditions if the third party has a duty to make the records and the holder of the record routinely compiles and keeps them.

27. **Leases: Real Estate: Taxes: Assessments.** The right to recover real estate taxes and assessments under a lease depends upon the wording of the lease contract.

28. **Taxes: Interest: Penalties and Forfeitures: Costs.** It is a general rule that in the absence of an express statute to the contrary, interest, penalties, and costs collected on delinquent taxes follow the tax.

29. **Appeal and Error.** An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.

30. **Actions: Pleadings: Notice.** Under Nebraska's liberal pleading regime for civil actions, a party is required to set forth only a short and plain statement of the claim showing the pleader's entitlement to relief and is not required to plead legal theories or cite appropriate statutes so long as the pleading gives fair notice of the claims asserted.

31. **Leases: Damages.** When a lease provides for late charges, they may be recoverable as damages.

32. **Appeal and Error: Words and Phrases.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

33. **Courts: Jurisdiction.** A district court, as a court of general jurisdiction, has inherent power to do all things necessary for the proper administration of justice and equity within the scope of its jurisdiction.

34. **Rules of the Supreme Court: Judges: Motions for Continuance.** Trial judges are encouraged to implement firm, consistent procedures for minimizing continuances to meet case progression standards.

35. **Trial: Judges.** A trial judge has broad discretion over the conduct of a trial.

36. **Affidavits: Public Officers and Employees.** In connection with an affidavit, a notary public completes a certificate, known as a jurat, which confirms that the affiant appeared before the notary, attested to the truth of his or her statements, and signed the affidavit.

37. **Oaths and Affirmations: Affidavits: Public Officers and Employees.** The fact that an affiant signed an affidavit in the presence of a notary and that the affiant's signature was in fact notarized is sufficient as an oath or affirmation.

38. **Affidavits.** Unless required by statute, an omission in a jurat that an affidavit was sworn to will not be fatal if the fact otherwise appears.

39. **Judgments: Words and Phrases.** A court abuses its discretion when its decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

40. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

W. Patrick Betterman, P.C., L.L.O., for appellants.

William F. Hargens and Lauren R. Goodman, of McGrath, North, Mullin & Kratz, P.C., L.L.O., and Gregory M. Bordo and Christopher J. Petersen, of Blank Rome, L.L.P., for appellee.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

# I. INTRODUCTION

After a tenant breached its written leases on two commercial properties, the landlord obtained a money judgment—based upon a jury's special verdict for "[u]npaid rent and late fees" and "[u]npaid taxes." The tenant appeals, and the landlord cross-appeals. We find no merit in the tenant's numerous arguments—challenging the landlord's standing, evidentiary rulings, damages based on lease provisions governing late fees and real estate taxes, statutory prejudgment interest,[1] and expenses awarded for a trial delay caused by the tenant's last-minute discharge of its lawyer. Not reaching the cross-appeal of an evidentiary ruling, we affirm the district court's judgment.

# II. BACKGROUND

We begin with a brief background. Additional facts will be discussed, as necessary, in the analysis section.

As landlord, AVG Partners I, LLC, also known as AVG Partners (AVG), sued its tenant's assignee, Genesis Health Clubs of Midwest, LLC, and its original tenant, 24 Hour Fitness USA, Inc. (collectively Genesis), for breaches of two commercial leases for property in Omaha, Nebraska. Each written lease was for a building that was used as a fitness club. One was located on South 145th Plaza (145th Plaza) and the other on North 118th Circle (North Circle).

In April 2017, Genesis closed the North Circle facility and vacated the premises even though the lease did not expire until October 2019. It failed to make any of the monthly $63,154.29 rent payments for April 2017 or thereafter and failed to pay property taxes. AVG sent Genesis a notice of default each month from April 2017 to April 2019.

With respect to the 145th Plaza lease, Genesis paid one-half of the $56,291.67 monthly rent due from September 2017 through June 2018. In response to the insufficient rent

---

[1] See Neb. Rev. Stat. § 45-104 (Reissue 2010).

payments, AVG sent notices of default. Despite the notices of default, Genesis never paid the remaining half of the rent due from September 2017 through June 2018. Since June 2016, Genesis had not paid any of the property taxes levied on 145th Plaza.

The matter proceeded to a jury trial. Genesis did not dispute the amounts of monthly rent owed under the written leases. Nor was there any dispute that Genesis breached the leases by failing to pay rent and real property taxes. In Genesis' opening statement, counsel informed the jury that there were two reasons why AVG was not owed all the money it claimed: AVG's failure to mitigate the loss and its failure to give the required notice.

The jury returned a special verdict in AVG's favor. Regarding the North Circle property, it found that AVG met its burden of proving Genesis breached the lease agreement, causing AVG damages of $1,657,800 for unpaid rent and late fees from April 1, 2017, to the date of the verdict and of $264,937.47 for unpaid taxes payable to that date. The jury found that Genesis did not meet its burden of proving AVG failed to take reasonable steps to minimize its damages. Regarding the property at 145th Plaza, the jury found that AVG met its burden of proving Genesis breached the lease agreement. According to the verdict, AVG's damages were $303,974.96 in unpaid rent and late fees from September 20, 2017, to the date of the verdict and $236,745.77 in unpaid taxes payable to that date. The court entered judgment on the verdict and further awarded prejudgment interest.

Genesis appealed, and AVG cross-appealed. We moved the case to our docket.[2]

## III. ASSIGNMENTS OF ERROR

[1] Genesis assigned 14 errors, most of which contained multiple subparts. An alleged error must be both specifically

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[3] We address only those errors both assigned and argued.

Genesis alleges, consolidated and restated, that the court erred in (1) failing to find that AVG lacked standing because it failed to prove its ownership of the properties at issue, (2) awarding prejudgment interest, (3) failing to reduce the special verdict for penalty interest on taxes and late fees for both properties and failing to grant Genesis a new trial on late fees, (4) admitting certain exhibits and testimony into evidence, and (5) awarding sanctions of $69,179.19.

On cross-appeal, AVG assigns that the court erred in sustaining Genesis' hearsay objection to the admission of exhibit 132.

### IV. STANDARD OF REVIEW

[2,3] Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.[4] The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court.[5]

[4,5] A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.[6] In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every

---

[3] *TNT Cattle Co. v. Fife*, 304 Neb. 890, 937 N.W.2d 811 (2020).

[4] *In re Maint. Fund Trust of Sunset Mem. Park Chapel*, 302 Neb. 954, 925 N.W.2d 695 (2019).

[5] *Id.*

[6] *Anderson v. Babbe*, 304 Neb. 186, 933 N.W.2d 813 (2019).

controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.[7]

[6] An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion.[8]

[7,8] When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[9] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.[10]

[9] Awards of prejudgment interest are reviewed de novo.[11]

[10,11] When reviewing a jury verdict, the appellate court considers the evidence and resolves evidentiary conflicts in favor of the successful party.[12] A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is competent evidence presented to the jury upon which it could find for the successful party.[13]

[12] Appellate review of a district court's use of inherent power is for an abuse of discretion.[14]

---

[7] *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[8] *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017).

[9] *Id.*

[10] *Pantano v. American Blue Ribbon Holdings*, 303 Neb. 156, 927 N.W.2d 357 (2019).

[11] *Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019).

[12] *Jacobs Engr. Group v. ConAgra Foods, supra* note 7.

[13] *Id.*

[14] *Bohling v. Bohling*, 304 Neb. 968, 937 N.W.2d 855 (2020).

## V. ANALYSIS

### 1. ASSIGNMENT OF LEASES TO AVG

#### (a) Additional Background

Genesis moved for a directed verdict on the basis that there was no evidence of an assignment of the lessor's interest. Genesis' counsel noted that there was no deed showing the conveyance of the leased property to AVG and moved to dismiss on the ground that AVG did not have standing. The court overruled the motion, stating that the evidence as a whole demonstrated AVG had the right to enforce the agreements and collect rent. The court also overruled Genesis' posttrial motion to set aside the verdict and judgment and motion for new trial asserting that AVG failed to prove the assignments.

#### (b) Discussion

[13,14] Genesis argues that AVG's claims fail, because AVG did not prove an assignment of the written leases to it. And in the absence of the assignment, it challenges AVG's standing. A party invoking a court's or tribunal's jurisdiction bears the burden of establishing the elements of standing.[15] Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf.[16] As discussed below, the evidence supported AVG's status as the landlord under the leases, and as the landlord, AVG obviously had a personal stake in this action.

[15,16] This is an action for two claims of breach of a written contract. A lease is a species of contract for the possession and profits of land and tenements, either for life or for a certain period of time, or during the pleasure of the parties, and the essential elements of a contract must be present.[17]

---

[15] *In re Maint. Fund Trust of Sunset Mem. Park Chapel, supra* note 4.

[16] *Id.*

[17] *Krance v. Faeh*, 215 Neb. 242, 338 N.W.2d 55 (1983).

In an action for rent, it is sufficient to show a contract with plaintiff and a holding under him or her; plaintiff's title or right of possession is immaterial.[18] Generally the relation of landlord and tenant is founded upon express contract, but such relation may be presumed from the conduct of the parties in the premises.[19] One in exclusive possession of the real estate of another with the latter's knowledge, in the absence of all evidence on the subject, will be presumed in possession by the owner's permission.[20] It is well settled that a tenant cannot, while occupying the premises, dispute his or her landlord's title.[21] And the estoppel of a tenant to deny the title of his or her landlord extends to everyone in privity with the landlord, and it inures to the benefit of any person to whom the landlord's title may pass, and continues until possession is actually surrendered.[22]

[17] Genesis emphasizes the absence of a document assigning the leases, but it was not essential. There is no general rule of evidence that a party must produce the best evidence which the nature of the case permits.[23] Thus, we have explained that there is no hierarchy of evidence.[24] Here, the evidence at trial demonstrated Genesis' understanding that AVG was its landlord under the leases; there was no evidence to the contrary. Genesis made rent checks payable to "AVG Partners I, LLC." When 24 Hour Fitness USA entered into a June 2016 lease assignment

---

[18] *Bartlett v. Robinson*, 52 Neb. 715, 72 N.W. 1053 (1897).

[19] *Steen v. Scheel*, 46 Neb. 252, 64 N.W. 957 (1895).

[20] *Skinner v. Skinner*, 38 Neb. 756, 57 N.W. 534 (1894).

[21] See, *Bender v. James*, 212 Neb. 77, 321 N.W.2d 436 (1982); *Penn Mutual Life Ins. Co. v. Sweeney*, 132 Neb. 624, 273 N.W. 46 (1937); *Kouma v. Murphy*, 129 Neb. 892, 263 N.W. 211 (1935); *Carson v. Broady*, 56 Neb. 648, 77 N.W. 80 (1898).

[22] *Hackney v. McIninch*, 79 Neb. 128, 112 N.W. 296 (1907).

[23] *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019).

[24] *Id.*

agreement with Genesis, it listed the leases involved here and identified the chain of assignments leading to the assignments of the leases to AVG. In April 2017, when Genesis vacated the North Circle premises, its law firm notified AVG, stating that "AVG Partners I, LLC" and Genesis were parties to the lease. Letters from the Douglas County treasurer concerning delinquent real estate taxes for 145th Plaza and North Circle were addressed to "AVG Partners I LLC" as the owner of the properties.

[18,19] In connection with this issue, Genesis argues that the court erred in admitting the opinion of Tere Throenle, AVG's chief financial officer, regarding AVG's ownership of the properties. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[25] Erroneous admission of evidence does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact.[26] Here, other properly admitted evidence demonstrated AVG's status as landlord under the leases. Assuming, without deciding, that it was error to admit Throenle's opinion on ownership of the properties, any such error was harmless.

We conclude that the assignments of error directed to AVG's alleged failure to prove assignment of the leases lack merit.

## 2. Prejudgment Interest

### (a) Additional Background

AVG filed its operative complaint in November 2017, setting forth when breaches occurred. The complaint requested damages in an amount to be proved at trial and "[f]or all other relief that the Court deems just and proper." But it did not specifically request prejudgment interest.

---

[25] *Weyh v. Gottsch, supra* note 11.

[26] See *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007).

Prejudgment interest was litigated at trial. Throenle testified that AVG calculated 12 percent interest on the outstanding rent. It was Throenle's understanding that 12 percent interest was the statutory amount of interest applicable under Nebraska law. In connection with Genesis' motion for directed verdict, counsel and the court discussed interest and the liquidated nature of the claims. In closing arguments, AVG's counsel stated, "[W]hen . . . Throenle was testifying, we showed you a couple of charts that had some numbers on them . . . . Those numbers that were provided during . . . Throenle's testimony, included, . . . a 12 percent prejudgment interest amount that was added to it." Counsel stated that the court would calculate the interest charge after trial.

The court awarded AVG "prejudgment interest in the amount of $254,118.78 (as of May 22, 2019, with prejudgment interest accruing thereon at $611.50 per day until entry of judgment)."

### (b) Discussion

#### (i) Application of Recent Decision

Genesis argues that our recent decision in *Weyh v. Gottsch*[27] should be applied only prospectively. *Weyh* was released after trial but 11 days before the court entered its order on the jury verdict and on prejudgment interest. Genesis contends that it would be inequitable to apply *Weyh* retroactively, because litigants have operated under the belief that prejudgment interest under § 45-104 was not allowed for unliquidated claims except when Neb. Rev. Stat. § 45-103.02 (Reissue 2010) applied.

In *Weyh*, we clarified Nebraska's existing law on prejudgment interest. We held that § 45-103.02(2) was not the exclusive means of recovering prejudgment interest. We explained that "§§ 45-103.02 and 45-104 provide[d] separate and independent means of recovering prejudgment interest,

[27] *Weyh v. Gottsch, supra* note 11.

and we h[e]ld that when a claim is of the types enumerated in § 45-104, then prejudgment interest may be recovered without regard to whether the claim is liquidated."[28] As we discuss below, § 45-104 has long been part of Nebraska law.

In rare circumstances, fairness and equity dictate that a newly announced rule of law be effective as of the date of the court's opinion.[29] Nearly half a century ago, the U.S. Supreme Court set forth the following standard for prospective application of a substantive change in law:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, [the court] "must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, [the court must weigh] the inequity imposed by retroactive application, for "[w]here a decision of [the court] could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."[30]

Genesis' rationale seems to be that one who violates a contract falling squarely within the statute should nonetheless avoid prejudgment interest because this court had judicially imposed a limitation appearing nowhere in the statute. We see no unfairness, inequity, injustice, or hardship in enforcing the statute as written. We will apply *Weyh* here.

---

[28] *Id.* at 283, 929 N.W.2d at 45.

[29] See *Commercial Fed. Sav. & Loan v. ABA Corp.*, 230 Neb. 317, 431 N.W.2d 613 (1988).

[30] *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971) (citations omitted).

### (ii) Compliance With
### *Neb. Ct. R. Pldg. § 6-1108(a)*

Genesis argues that AVG's failure to comply with a pleading rule is fatal to its claim for prejudgment interest. Section 6-1108(a) states in part, "If the recovery of money be demanded, the amount of special damages shall be stated but the amount of general damages shall not be stated; and if interest thereon be claimed, the time from which interest is to be computed shall also be stated."

The above-quoted language of § 6-1108(a) is not a new requirement. It was long codified in statute.[31] The statutory language was repealed in 2002,[32] when the Legislature "amend[ed] the civil procedure code of Nebraska from that of a code pleading system to a notice pleading system."[33] In connection with the repeal, the Legislature enacted a statute empowering this court to promulgate rules of pleading to apply in civil actions.[34] Hence, the statutory language became part of pleading rule § 6-1108(a).

Genesis directs our attention to our cases stating that a party was not entitled to prejudgment interest where it was not requested in the party's complaint.[35] In *Higgins v. Case Threshing Machine Co.*,[36] we observed that the petition did not mention interest, that a statute required the time from which interest is to be computed to be stated, and that we did not allow interest in two earlier cases where it was not prayed for

---

[31] See, e.g., Rev. Stat. §§ 92 (1867) and 7664 (1913), Comp. Stat. §§ 8608 (1922) and 20-804 (1929), and Neb. Rev. Stat. § 25-804 (1943).

[32] See 2002 Neb. Laws, L.B. 876, § 92.

[33] Introducer's Statement of Intent, L.B. 876, Judiciary Committee, 97th Leg., 2d Sess. (Jan. 25, 2002).

[34] See, 2002 Neb. Laws, L.B. 876, § 1; Neb. Rev. Stat. § 25-801.01 (Reissue 2016).

[35] See, *Life Investors Ins. Co. v. Citizens Nat. Bank*, 223 Neb. 663, 392 N.W.2d 771 (1986); *Higgins v. Case Threshing Machine Co.*, 95 Neb. 3, 144 N.W. 1037 (1914).

[36] *Higgins v. Case Threshing Machine Co., supra* note 35.

in the petition. In one of those earlier cases, we stated that where "the plaintiff does not pray for interest, but simply prays a judgment for $200 and costs," it was error to authorize the jury to add interest to whatever damages it found due.[37] In the other, we cited the statute and stated that it was error to permit the jury to include interest on the sum claimed in the absence of a prayer for interest in the petition.[38] In *Life Investors Ins. Co. v. Citizens Nat. Bank*,[39] we cited *Higgins* and stated that prejudgment interest could not be awarded because it was not requested in the petition.

Significantly, there is no indication in these earlier cases of any statutory basis for an award of prejudgment interest. We stated in *Weyh*: "In Nebraska, there are two statutes that authorize recovery of prejudgment interest. The first, § 45-104, was enacted in 1879, and the second, § 45-103.02, was enacted in 1986 and amended in 1994."[40]

Section 45-103.02 could not have supplied a basis for an award in the cases Genesis cites, because it was not in effect at the time of these pre-1987 cases. As originally adopted, § 45-103.02 applied to "'all causes of action accruing on or after January 1, 1987.'"[41]

[20] Section 45-104 and its prior codifications were in effect, but it is not clear that the statute would have applied to the earlier cases. "Since its adoption more than a century ago, § 45-104 has identified four types of claims—all contract based—under which prejudgment interest is allowed."[42] Section 45-104 applies to four types of judgments: (1) money due on any instrument in writing; (2) settlement of the

---

[37] *City of South Omaha v. Ruthjen*, 71 Neb. 545, 549, 99 N.W. 240, 242 (1904).

[38] See *Rawlings v. Anheuser-Busch Brewing Ass'n.*, 1 Neb. (Unoff.) 555, 95 N.W. 792 (1901).

[39] *Life Investors Ins. Co. v. Citizens Nat. Bank, supra* note 35.

[40] *Weyh v. Gottsch, supra* note 11, 303 Neb. at 301, 929 N.W.2d at 55.

[41] *Id.* at 306, 929 N.W.2d at 58. See § 45-103.02 (Reissue 1988).

[42] *Weyh v. Gottsch, supra* note 11, 303 Neb. at 301, 929 N.W.2d at 55.

account from the day the balance shall be agreed upon; (3) money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof; and (4) money loaned or due and withheld by unreasonable delay of payment.[43] But *Higgins* was an action upon an appeal bond, *City of South Omaha v. Ruthjen* was an action for damages to property resulting from grading of a street, and *Life Investors Ins. Co.* was an action to recover overpayment of insurance proceeds under alternative theories of fraudulent misrepresentation and mutual mistake.[44] It does not appear that there would have been any entitlement to prejudgment interest under § 45-104 in these cases.

Genesis also relies on *Albrecht v. Fettig*,[45] a recent decision by the Nebraska Court of Appeals. There, the court rejected an argument that a plaintiff's request for "'further relief as the Court deems just and equitable'" sufficiently put the defendant on notice that prejudgment interest could be awarded.[46] The decision did not mention *Weyh*[47]—decided 1 month earlier—and erroneously stated that "[p]rejudgment interest may be awarded only as provided in . . . § 45-103.02."[48] The Court of Appeals recognized that § 45-103.02(2) was adopted after *Life Investors Ins. Co.* and that tension appeared to exist between the language of § 45-103.02(2) that prejudgment interest "shall accrue" and § 6-1108(a). The Court of Appeals reasoned:

> [W]e do not believe that this tension is irreconcilable. Section 45-103.02(2) clearly sets out the availability of prejudgment interest. However, the court rule (adopted as

---

[43] *Weyh v. Gottsch, supra* note 11.

[44] See, *Life Investors Ins. Co. v. Citizens Nat. Bank, supra* note 35; *Higgins v. Case Threshing Machine Co., supra* note 35; *City of South Omaha v. Ruthjen, supra* note 37.

[45] *Albrecht v. Fettig*, 27 Neb. App. 371, 932 N.W.2d 331 (2019).

[46] *Id.* at 387, 932 N.W.2d at 342.

[47] *Weyh v. Gottsch, supra* note 11.

[48] *Albrecht v. Fettig, supra* note 45, 27 Neb. App. at 387, 932 N.W.2d at 342.

part of the introduction of notice pleading to Nebraska) is concerned with litigants having adequate notice of the relief a plaintiff is seeking to obtain. Therefore, although the rule does place a procedural condition on a plaintiff's ability to recover prejudgment interest, it does not negate a plaintiff's ability to recover. Moreover, the rule secures a defendant's ability to have notice of the entire scope of the relief requested and prepare defenses thereto. [49]

In *Albrecht*, like in the earlier cases, there was no indication that the defendant had notice of a claim for prejudgment interest or had an opportunity to argue against an award of such interest prior to entry of judgment.

The district court cited a case decided by the Court of Appeals shortly before *Albrecht*. In *Farm & Garden Ctr. v. Kennedy*,[50] the complaint requested interest under Neb. Rev. Stat. § 45-101.04 (Reissue 2010), but the plaintiff ultimately sought interest under § 45-104. The Court of Appeals reasoned that "[t]here was no question [the plaintiff] was seeking interest on unpaid balances preceding the entry of a final judgment" and that "there was no surprise or prejudice" to the defendant.[51] The court then stated the Nebraska Supreme Court has held that "if a statutory basis exists for an award of interest, . . . interest can be awarded even if the petition is silent as to a request for interest."[52] For that proposition, the Court of Appeals cited to *Thacker v. State*,[53] an eminent domain proceeding. In *Thacker*, interest was awarded under Neb. Rev. Stat. § 76-711 (1943), but the condemnor claimed the award was erroneous because

---

[49] *Albrecht v. Fettig, supra* note 45, 27 Neb. App. at 389, 932 N.W.2d at 343.

[50] *Farm & Garden Ctr. v. Kennedy*, 26 Neb. App. 576, 921 N.W.2d 615 (2018).

[51] *Id.* at 600, 921 N.W.2d at 632.

[52] *Id.*

[53] *Thacker v. State*, 193 Neb. 817, 229 N.W.2d 197 (1975), *overruled in part on other grounds, Langfeld v. Department of Roads*, 213 Neb. 15, 328 N.W.2d 452 (1982).

the petition did not pray for interest. We disagreed, stating that "[t]he owner's right to interest rests upon the provisions of [§ 76-711], and not upon the prayer of the petition."[54] In a 2009 case, the Court of Appeals reached the same conclusion, noting that although the plaintiff did not request interest in the prayer of its petition, the plaintiff was entitled to interest under § 76-711 (Reissue 2003).[55]

[21] Under the circumstances before us, we agree with the district court that AVG is not precluded from recovering prejudgment interest under § 6-1108(a). Specifically requesting interest in the complaint is encouraged, because it clearly puts the opposing party on notice. But compliance with § 6-1108(a) is not determinative where entitlement to interest is based on statute and the adverse party had notice and an opportunity to be heard prior to judgment. That is the situation here, where prejudgment interest was the subject of extensive argument prior to judgment.

### (iii) Liquidated Nature of Claims and Commencement

Genesis advances two more reasons why AVG should not be able to recover prejudgment interest: AVG's rent claims were unliquidated and it failed to prove when prejudgment interest commenced. Both reasons fail.

[22,23] Section 45-104 allows for interest "on money due on any instrument in writing." We have recognized that interest under § 45-104 can be recovered on a lease, although the statute's provisions may be superseded by terms set forth in the lease.[56] And in *Weyh*, we clarified that § 45-104 contained no requirement that the claims described therein must also be liquidated in order to recover prejudgment interest.[57] Thus,

---

[54] *Id.* at 821, 229 N.W.2d at 201.

[55] See *Walter C. Diers Partnership v. State*, 17 Neb. App. 561, 767 N.W.2d 113 (2009).

[56] See *Prudential Ins. Co. v. Greco*, 211 Neb. 342, 318 N.W.2d 724 (1982).

[57] *Weyh v. Gottsch, supra* note 11.

whether a claim is liquidated or unliquidated is immaterial with respect to a litigant's ability to recover prejudgment interest under § 45-104.

Genesis also argues that there was a failure of proof regarding when interest should commence. According to Genesis, "AVG failed to prove it gave notice in any manner specified in §19.2 and thus failed to prove the date prejudgment interest commenced, if at all."[58] We disagree.

Section 19.2 of the written leases addressed the notice that must be given, stating that notice must be given in writing and would be deemed effective "(2) business days after deposit in the United States mail in the County, certified and postage prepaid" or "upon receipt if sent in any other way." The notices of default showed that all were sent via email and that some were additionally sent via certified mail. The co-owner and president of Genesis admitted receiving letters, emails, and notices of default from AVG's counsel. The evidence sufficiently established Genesis' receipt of the notices of default.

Section 15.1 of the leases provided that default occurs if the tenant fails to pay rent within 10 days of written notice of nonpayment. The first notice of default for North Circle was sent on April 4, 2017. Thus, prejudgment interest on that claim of unpaid rent commenced running on April 15. The commencement date for prejudgment interest for the other claims of unpaid rent can similarly be ascertained by adding 11 days to the date on which the notice of default was sent.

We conclude that Genesis' challenges to the award of prejudgment interest lack merit.

### 3. Tax Penalties

#### (a) Additional Background

The written leases addressed payment of real property taxes. They obligated the tenant to pay "any tax, assessment, charge, license, fees, levy, real property or other tax" levied against the premises. The leases required that the landlord send the

---

[58] Brief for appellants at 34.

tax-due notice to the tenant and that the tenant "pay said taxes prior to delinquency dates." There is no dispute that Genesis failed to pay the property taxes due under both leases for tax years 2016 through 2018.

Throenle instructed AVG's law firm to issue notices of default for delinquent property taxes concerning 145th Plaza. Because property taxes on these properties were "billed" every 6 months, the notices were sent August 2, 2017; April 2 and August 2, 2018; and April 10, 2019. The notices of default identified the amount of unpaid property taxes. To obtain such information, AVG consulted the Douglas County treasurer's website. AVG followed up with a telephone call to confirm whether any payment had been made that was not posted to the website.

Throenle testified that she received a letter in the mail from the Douglas County treasurer regarding a listing for a tax lien sale of the delinquent property taxes for 145th Plaza. She relied on the information in the letter to provide Genesis with the amounts that were unpaid. According to Throenle, the letter was something that AVG maintains in its files for the property in the ordinary course of its business. Douglas County also charged interest and penalties for late payment. To ascertain the amount owed on any given day, Throenle testified that she called the "Assessor's" office to obtain the interest charges through that actual day. She last called on April 26, 2019.

Similarly, Throenle instructed AVG's law firm to send notices of default to Genesis for nonpayment of property taxes on the North Circle property. The amounts stated on the notices were obtained from documentation from the Douglas County treasurer. Throenle testified regarding her efforts to determine the amount of property taxes, interest, and penalties due for the North Circle property on any given day. She obtained the total amount due as of April 26, 2019.

The court received into evidence exhibits 117 and 123, which set forth a compilation of AVG's alleged damages for each respective lease. Throenle testified that she prepared the exhibits with one of AVG's attorneys and that she obtained

the information contained in the exhibits from AVG's accounting records and from the "County Assessor." Throenle also testified that the information on the exhibits was contained in exhibits that had been admitted into evidence.

The exhibit for 145th Plaza, exhibit 117, showed unpaid rent from September 2017 through June 2018 of $281,458.30, with late charges at 5 percent amounting to $14,072.92. Late charges for August, September, and November 2018 totaled $8,443.74. The unpaid property taxes, including interest and late fees, as of April 26, 2019, were calculated to be $236,745.77. According to the exhibit, AVG's total damages for 145th Plaza as of May 6, 2019, were $540,720.73. The exhibit for North Circle, exhibit 123, showed total unpaid rent from April 2017 to April 2019 to be $1,578,857.25 and total late charges at 5 percent during that period to be $78,942.75. The total unpaid property taxes, including interest and late fees, were $264,937.47. The exhibit showed AVG's total damages as of May 6, 2019, to be $1,922,737.47.

### (b) Discussion

#### (i) Admissibility of Exhibits and Testimony

Genesis both assigned and argued that the court erred in admitting exhibits 116 and 122, which contained tax information from the Douglas County treasurer, and exhibits 117 and 123, which showed a compilation of damages for the respective leases. Genesis also argues that Throenle's testimony about her telephone calls to the "Assessor's Office" should not have been admitted.

### a. Exhibits 116 and 122

Exhibit 116—pertaining to 145th Plaza—and exhibit 122—concerning North Circle—were five-page documents containing similar information from the Douglas County treasurer regarding taxes for the two properties. The first two pages of each exhibit were black-and-white printouts titled "Douglas County Treasurer - Real Property Tax Inquiry," with each page appearing to contain identical information, purportedly

from the treasurer's official website. The third page was a February 2018 letter from the treasurer to AVG setting forth the amount of delinquent taxes and the amount that needed to be paid by February 28 to avoid additional penalty interest and prevent a tax lien. The fourth and fifth pages showed the tax billed each year, tax paid, and interest paid. The fourth page contained the interest calculation to February 28, and the "Grand Total Due" matched the amount stated in the letter. Throenle testified that the fourth and fifth pages were enclosed with the letter.

When AVG offered exhibits 116 and 122 into evidence, Genesis objected on numerous grounds, including that they failed to comply with the authenticity requirements of Neb. Rev. Stat. §§ 27-901 and 27-902 (Reissue 2016), that foundation was incomplete under Neb. Rev. Stat. § 27-1005 (Reissue 2016), and that they were hearsay. The court overruled the objections and received the exhibits. In Genesis' brief, it asserts that the exhibits were "unauthenticated hearsay."[59]

[24,25] Authentication or identification of evidence is a condition precedent to its admission and is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.[60] A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity.[61]

Throenle's testimony about the exhibits satisfied the authentication requirement. She identified the first two pages of each exhibit as a "print screen" or "printout." Although she incorrectly stated at times that an exhibit was from the assessor's website rather than that of the treasurer, the exhibit clearly showed that the documents were from the treasurer. A computer printout is admissible as a business record if the

---

[59] Brief for appellants at 38.

[60] See § 27-901(1).

[61] *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018), *modified on denial of rehearing* 302 Neb. 492, 924 N.W.2d 64 (2019).

offeror establishes a sufficient foundation in the record for its introduction.[62] Throenle testified that the last three pages were received by AVG from the Douglas County treasurer and maintained in AVG's files in the ordinary course of business and in connection with establishing the taxes due. Through Throenle's testimony, AVG provided the court with sufficient evidence to show that the documents were what they purported to be.

[26] To the extent the exhibits were hearsay, an exception to the hearsay rule applied. Under Neb. Rev. Stat. § 27-803(5)(b) (Reissue 2016), an exception to the hearsay rule includes

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, other than opinions or diagnoses, that was received or acquired in the regular course of business by an entity from another entity and has been incorporated into and kept in the regular course of business of the receiving or acquiring entity; that the receiving or acquiring entity typically relies upon the accuracy of the contents of the memorandum, report, record, or data compilation; and that the circumstances otherwise indicate the trustworthiness of the memorandum, report, record, or data compilation, as shown by the testimony of the custodian or other qualified witness.

The term "data compilation" in § 27-803(5)(b) is broad enough to include records furnished by third parties with knowledge of the relevant acts, events, or conditions if the third party has a duty to make the records and the holder of the records routinely compiles and keeps them.[63] It is not disputed that the county treasurer had a duty to make such records.

Throenle testified extensively concerning her duties in administering the leases for AVG. She obtained the necessary information to include in notices of default regarding the amount of unpaid taxes. To do so, she would consult

---

[62] *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

[63] See *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015).

information displayed on the treasurer's website. She followed up with a telephone call, ensuring the accuracy of the website's data. She also relied on the letter mailed to AVG from the treasurer, which letter AVG maintained in its files in the ordinary course of its business. The exhibits fit within the business record exception to hearsay.

We find no error or abuse of discretion in admitting exhibits 116 and 122.

### b. Throenle's Testimony and Exhibits 117 and 123

After the court had received notices of default for 145th Plaza and data from the county treasurer in exhibit 116, Throenle testified that AVG determined the outstanding taxes, interest, and penalties for 145th Plaza via an April 26, 2019, telephone call. When asked what that amount was, Throenle answered, "I don't recall the exact amount." AVG's counsel responded: "All right. We'll provide that for you." Counsel then had Throenle look at exhibit 117, which had not been offered into evidence at that point. Shortly thereafter, the exhibit was offered and received, and Throenle proceeded to testify to the amounts shown on the exhibit.

Throenle confirmed that she ascertained the unpaid property taxes for the North Circle property in the same manner as for 145th Plaza. After the court received notices of default concerning North Circle and the county treasurer's data contained in exhibit 122, counsel showed Throenle exhibit 123. Throenle identified it as summaries that she prepared with counsel and testified that she obtained the information from documents that had been admitted into evidence and about which she had already testified. When asked if exhibit 123 would be helpful to Throenle in testifying to the amounts owed by Genesis for the property, Throenle answered, "Yes." AVG then offered the exhibit into evidence, and the court received it over Genesis' objections. Throenle testified that she reviewed a chart for accuracy, and she later testified about the amounts displayed thereon.

Genesis argues that Throenle's testimony about the April 26, 2019, telephone call to the treasurer's office was hearsay and that exhibits 117 and 123—which contained the amount of unpaid property taxes, interest, and penalties based on the telephone call—were also hearsay. Genesis additionally challenges the overruling of its objections to exhibits 117 and 123 based on improper foundation for a summary under Neb. Rev. Stat. § 27-1006 (Reissue 2016). Even if we assume there was error in admitting Throenle's testimony or the exhibits, it would not be reversible error.

Exhibits 117 and 123 were offered during Throenle's testimony. Throenle helped prepare the exhibits and was familiar with the information they contained. Importantly, she was subject to cross-examination at trial. The exhibits compiled evidence from the notices of default sent by AVG and from the county treasurer's documents—evidence that, with one caveat, was already received at trial. The only information contained on exhibits 117 and 123 that was not already in evidence was the interest charges through a particular day. Aside from calling the treasurer's office, Throenle was unaware of any other means to obtain the amount of unpaid taxes and interest charges due through any particular day. But determining that amount involved only a mathematical calculation. Because exhibits 117 and 123 were based on information already in evidence and otherwise determinable by use of a calculator, the only possible "prejudice" to Genesis was that it made the jury's duty to determine damages too easy. We find no reversible error on that basis.

### (ii) Inclusion of "Penalties" in Award for Taxes

Genesis argues that the jury's special verdict erroneously included "[t]ax [p]enalties."[64] The tax penalties to which Genesis refers are amounts assessed as statutory interest at

---

[64] Brief for appellant at 34.

the rate of 14 percent on delinquent payments of taxes.[65] The county treasurer's documents show that it also imposed a $5 advertising charge. We have declared that interest imposed on an unpaid tax is a penalty.[66] Genesis contends that because the court instructed the jury that the measure of the damages was "[t]he amount of unpaid real estate taxes due," it was error to include penalties as part of the award.

[27] *Prudential Ins. Co. v. Greco*[67] provides insight on the right to recover taxes and assessments under a lease. There, the lease provided: "'Tenant shall be liable for and shall pay to either the Owner or the taxing authority before delinquent all taxes levied or assessed against or for leasehold improvements . . . .'"[68] Landlord presented testimony that it paid the full amount due on the taxes, including amounts due on tenant's improvements. We stated: "The elements necessary to establish a right of recovery were that [landlord] paid taxes levied to the taxing authority; that included in the amount paid as taxes was a sum based upon tenant's improvements; and that [tenant] owes [landlord] a sum certain for the payment of the taxes."[69] We determined that landlord made out a prima facie case under provisions of the lease establishing the right to recover taxes paid for improvements. In other words, the right to recover real estate taxes and assessments under a lease depends upon the wording of the lease contract.

[28] The lease agreements here broadly defined Genesis' obligation to pay real estate taxes. Under a statute governing collection of delinquent real estate taxes, interest is "collected the same as the tax upon which the interest accrues."[70] Another statute declares taxes on real property to be a first lien on

---

[65] See Neb. Rev. Stat. § 45-104.01 (Reissue 2010).

[66] See *Ameritas Life Ins. v. Balka*, 257 Neb. 878, 601 N.W.2d 508 (1999).

[67] *Prudential Ins. Co. v. Greco, supra* note 56.

[68] *Id.*, 211 Neb. at 344, 318 N.W.2d at 726.

[69] *Id.* at 345, 318 N.W.2d at 727.

[70] Neb. Rev. Stat. § 77-207 (Reissue 2018).

the property taxed.[71] It is a general rule that in the absence of an express statute to the contrary, interest, penalties, and costs collected on delinquent taxes follow the tax.[72] Here, §§ 2.1 and 7.2 of the leases define "'Real Property Taxes'" to be "any tax, assessment, charge, license, fees, levy, real property or other tax" levied against the premises. (Although § 2.1 refers to the definition contained in § 7.5, this appears to be a typographical error insofar as § 7.5 addresses utilities and makes no mention of taxes.) One definition of "charge" is "[p]ecuniary burden; expense, cost."[73] We conclude that the county treasurer's collections of statutory interest and the advertising fee fit within that definition. Because the county's interest and advertising imposed a pecuniary burden on the real estate, they were "charges" as that term was used in the lease. Thus, the provisions of the lease made them recoverable as a component of "real estate taxes."

### (iii) Failure to Mitigate
### Tax Penalties

[29] Genesis assigned that AVG was barred from recovering tax penalties because it failed to mitigate them, but we do not resolve the insufficiently argued assignment. The totality of Genesis' support for the assigned error contained in the argument section of its brief stated: "The tax penalties AVG seeks are avoidable. AVG's failure to mitigate them bars its recovery. *Tedd Bish Farm, Inc. v. Southwest Fencing Services, LLC*, 291 Neb. 527 (2015)."[74] An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.[75]

---

[71] See Neb. Rev. Stat. § 77-203 (Reissue 2018).

[72] *School District of the City of Omaha v. Adams*, 147 Neb. 1060, 26 N.W.2d 24 (1947).

[73] "Charge," Oxford English Dictionary Online, http://www.oed.com/view/Entry/30686 (last visited Aug. 26, 2020).

[74] Brief for appellants at 37.

[75] *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

### 4. Late Charges for Nonpayment of Rent

#### (a) Additional Background

The written leases contained similar terms on payment of rent and late charges. They specified that rent was due on the first day of each month. According to the leases, the tenant acknowledged that its late payment of rent "will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which is extremely difficult or impracticable to determine." Therefore, if any installment of monthly rent was not received by the landlord within 10 days of the tenant's receipt of a written notice of nonpayment, the tenant shall pay to the landlord "a one-time additional sum equal to five percent (5%) of the amount overdue as a late charge for each such overdue payment."

Throenle explained that late rent payments caused AVG to incur administrative costs to calculate and verify amounts owed and to alert AVG's attorneys to prepare a notice of default for the tenant. AVG then incurred legal fees in connection with counsel's preparation of the notices. Throenle estimated that she spent 2 to 3 hours per month assisting with the notices of default and that the actual cost to AVG for her services in that regard was $150 an hour. Throenle testified that she was assisted by an individual who spent approximately 30 minutes to 1 hour each month at a cost of $30 to $40. Thus, Throenle testified that $370 a month for her work and that of the other individual was a fair estimate of costs incurred by AVG's staff associated with notices of default, but AVG also incurred attorney fees. In contrast, the 5-percent late charge amounted to around $2,500 for the 145th Plaza lease and over $3,000 for the North Circle lease.

#### (b) Discussion

##### (i) Whether AVG Claimed
##### Late Charges

Genesis argues that AVG should not have been able to recover late charges, because it failed to claim them. According

to Genesis, the complaint did not allege Genesis breached the leases by failing to pay late charges. We disagree.

[30] Under Nebraska's liberal pleading regime for civil actions, a party is required to set forth only a short and plain statement of the claim showing the pleader's entitlement to relief and is not required to plead legal theories or cite appropriate statutes so long as the pleading gives fair notice of the claims asserted.[76] The complaint alleged that the leases required Genesis to "[p]ay late charges in the event of a failure to make timely rent payments." It set forth an "amount of rent including late charges pursuant [to] the 145th Plaza Lease" that was due. And it further alleged that Genesis breached both leases by "[f]ailing to make timely rent payments . . . ." The complaint gave fair notice that AVG was seeking to recover late charges as a part of rent.

### (ii) Whether Late Charges Are Recoverable

Genesis next contends that late charges were not recoverable for three reasons. We find no merit to its arguments.

First, Genesis argues that late fees were not included as recoverable damages in the jury instructions. The instructions stated that the "measure of the damage" was "[t]he amount of unpaid rent due" and "[t]he amount of unpaid real estate taxes due." While the instructions did not separately identify late charges as a measure of damages, such charges fall within the definition of "rent" under the leases. Both of the leases define "rent" as "Monthly Rent and Additional Rent, collectively." And they define "additional rent" to mean "any and all sums (whether or not specifically called 'Additional Rent' in this Lease) other than Monthly Rent which [tenant] is or becomes obligated to pay to Landlord under this Lease." Thus, late charges are recoverable as a component of "rent."

[31] Second, Genesis argues that late fees are a penalty and thus not recoverable as a matter of law. When a lease provides

---

[76] See *Vasquez v. CHI Properties*, 302 Neb. 742, 925 N.W.2d 304 (2019).

for late charges, they may be recoverable as damages.[77] Here, the leases provided for a 5-percent late charge on overdue payments and the leases' definition of rent encompassed such charges. They were recoverable as damages.

Third, Genesis claims that AVG failed to prove Genesis received default notices. The leases provide that Genesis shall pay to AVG a late charge if any payment of rent due "is not received by Landlord within ten (10) days of [tenant's] receipt of a written notice of nonpayment." As we explained above regarding prejudgment interest, the evidence sufficiently established Genesis' receipt of the notices of default.

### (iii) Whether New Trial on Late Charges Is Required

Alternatively, Genesis argues that a new trial on late fees is required. During the jury instruction conference, Genesis objected to the verdict form, claiming that "the late fees based on the testimony of . . . Throenle were for the purpose of penalty and are unenforceable under Nebraska law, and it would be error to instruct on late fees." The court responded, "I'm going to go with the verdict form that we've talked about and the one I've provided to you." Later, Genesis timely filed a motion for new trial asserting, among other things, that the court committed plain error by adding "late fees" after "[u]npaid rent" on the verdict form, by failing to instruct the jury not to award late fees if the jury determined they were a penalty, and by including late fees with damages on the verdict form when such fees were not recoverable. The court overruled the motion.

[32] Genesis argues that the court committed plain error by failing to instruct the jury on Genesis' penalty and condition precedent defenses to late charges. It further asserts that there was plain error in the jury's award of late charges for August, September, and November 2018. Plain error is error plainly

---

[77] See *GFH Financial Serv. Corp. v. Kirk*, 231 Neb. 557, 437 N.W.2d 453 (1989).

evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[78] We see no plain error.

### 5. Award of Sanctions

#### (a) Additional Background

Six days before trial was originally set to begin, Genesis moved for a continuance. Genesis stated in the motion that it had terminated the attorney-client relationship with its counsel and requested 3 weeks to retain new counsel. Genesis' attorney submitted an affidavit which stated that his representation of Genesis was terminated "as a result of a good faith disagreement . . . regarding trial strategy."

Two days later, the court held a hearing on the motion for continuance. Genesis' attorney recognized that it was "two business days before trial is to begin," but stated that there was "no time for new counsel to get up to speed and to try the case on Monday." Counsel explained that he and Genesis had a difference of opinion about trial strategy and that the disagreement "came to a head" as they prepared to file documents with the court indicating how they planned to proceed at trial. The court allowed the attorney, having been fired by Genesis, to withdraw. But the court declined to continue the trial.

Genesis obtained counsel to make a limited appearance on its behalf in order to file a renewed motion for continuance of trial and to appear at a hearing on the motion. The court heard the motion on February 4, 2019, the day trial was to commence. The court explained that it earlier declined to continue the trial because the matter had been on file for nearly 2 years, the request for continuance was a late one, and only a vague reason of dispute in trial strategy was given.

AVG opposed a continuance. It asserted that it has "$60,000 a month of continuing damages" and did not see why Genesis' decision to terminate its representation by counsel should force AVG to continue incurring over $2,000 a day in damages.

---

[78] *In re Application No. OP-0003*, 303 Neb. 872, 932 N.W.2d 653 (2019).

Because trial was set to begin, the court observed that 35 jurors had been called "at great expense to the county." And AVG had in attendance its chief financial officer, its chief operating officer, and an expert witness. The court asked AVG's attorneys: "[I]n the last, say, five days, what have you incurred in travel expenses, witness — expert witnesses, your time? Just a ballpark estimate. Twenty thousand, 25,000?" One attorney responded that $25,000 "was what was in my head," and the other stated, "I think that sounds fair from what they've told me."

The court inquired whether Genesis was prepared to "pay a substantial sanction, which would include, at a minimum, all of [AVG's] costs, travel costs, preparation costs, our juror costs, [and] their expert witness costs" if the court continued the trial. Counsel responded that if the court so ordered, he believed Genesis would pay.

The court sustained the motion to continue. The court cautioned that Genesis would have to pay for substantial costs incurred as a result:

> The sanction's going to consist of our cost of jurors, [c]ounsel's time — all three of them — their travel expenses, their prep time over the last four or five days, their client's travel time and their time that they're here, and I'd like an affidavit, if you would, to that effect. If necessary, I'll — we can conduct a telephonic hearing on it. But, please, include all your related costs, prep costs, expert witness costs for being here. You know, not that unusual to have prep time for any trial, but specifically the prep time in the last four or five days, the time we spent at this hearing, the time we spent on Thursday, and — because I anticipate it's going to be very significant.

Attorney Gregory M. Bordo submitted an affidavit setting forth AVG's expenses. He averred that his hourly rate was $550 and that cocounsel's rate was $475 per hour. Their attorney fees for January 29 through February 4, 2019, amounted to $42,780, and their travel and lodging expenses were

$2,878.66. AVG's local counsel charged $450 per hour, and he billed $5,556.78 for those 5 business days. AVG incurred fees of $4,500 for its expert's services during that time. Bordo asserted that the value of AVG's chief operating officer's time to prepare and appear at trial was $6,375 and that his travel and lodging expenses were $1,212.40. Bordo averred that the value of AVG's chief financial officer's time to prepare and appear at trial was $4,750 and that her travel and lodging expenses were $1,126.35. Thus, Bordo requested fees and costs of $69,179.19.

The court's February 13, 2019, order recounted that it heard the renewed motion to continue on an expedited basis on February 4—the first day of the scheduled jury trial—while summoned jurors were in the courthouse awaiting trial to begin. The order stated that on February 7, AVG submitted Bordo's affidavit with exhibits demonstrating a total of $69,179.19 in costs and fees incurred by AVG from January 29 to February 4 in preparation for the scheduled trial. The order recited that as of February 12, it had received no opposition from Genesis. It ordered Genesis to pay for AVG's fees and costs in the amount of $69,179.19.

A week later, Genesis filed a motion to alter or amend the order. Among other things, Genesis requested that Bordo's affidavit be stricken because it did not contain a proper jurat showing that Bordo was sworn and because it was not marked and offered at a hearing on the record at which Genesis could object and be heard. Alternatively, Genesis asked that the court reduce the award to take into account the reasonable local hourly rate of lawyers practicing in Douglas County, to include the expense of only one out-of-state lawyer, and to eliminate compensation of AVG's personnel.

The court held a hearing on the motion to reconsider the sanctions. AVG offered Bordo's affidavit into evidence, Genesis objected, and the court reserved ruling.

Nine days after the hearing, Genesis filed objections to Bordo's affidavit. It objected that the jurat did not recite that

the affidavit was duly sworn to by the party making the same. The document further set forth numerous specific objections to parts of the affidavit.

On March 13, 2019, the court overruled the motion to alter or amend and the objections to Bordo's affidavit. After quoting its dialogue with Genesis' counsel during the February 4, 2019, hearing, the court stated:

> The Court made it clear at the hearing on February 4 . . . that [AVG] had no doubt incurred considerable expenses in preparing for the trial in the previous four days, had incurred considerable expenses to travel to Omaha from Los Angeles, CA, with client representatives who were necessary witnesses at trial, had incurred considerable lodging expenses, and had retained an expert witness who was present for trial. It would be inequitable for [AVG] to have incurred these expenses to appear at trial as ordered by the Court, only to have the trial continued because [Genesis], on the eve of trial (which had been specially set for more than six (6) months) fired its attorney for reasons still largely unknown. The Court does not believe, under the circumstances presented, that failure to continue the trial would have been an abuse of discretion.

The court explained that it did not use local rates in its award of attorney fees because, consistent with its stated intention during the February 4 colloquy, it awarded AVG its actual fees, costs, and expenses. The court also clarified that although it had referred to the award as a "'sanction,'" it was not one: "The Court was not sanctioning [Genesis]—this was an equitable award to [AVG] for doing what the Court ordered—be prepared for trial, and appear at the trial, on February 4, 2019. [AVG] should not be penalized for [Genesis'] last minute firing of its attorney."

On June 18, 2019, the court entered an order addressing, among other things, pretrial motions. With respect to Bordo's affidavit, the court recognized Genesis' lengthy objection filed on March 7 but stated that "[h]aving submitted the matter to

the Court on February 26, 2019, the Court sustained the objection to [Genesis'] objections . . ." and received the exhibit.

### (b) Discussion

#### (i) Jurisdiction

[33-35] We quickly dispose of Genesis' first argument. It claims that the court lacked subject matter jurisdiction to award sanctions. A district court, as a court of general jurisdiction, has inherent power to do all things necessary for the proper administration of justice and equity within the scope of its jurisdiction.[79] Trial judges are encouraged to implement firm, consistent procedures for minimizing continuances to meet case progression standards.[80] And a trial judge has broad discretion over the conduct of a trial.[81] As the court clarified, its so-called "sanction" was an equitable award. Through its inherent authority, the court possessed the power to make such an award.

#### (ii) Lack of Hearing
#### on Amount

Genesis next faults the court for not holding a de novo hearing on the amount of the award. It cites no authority to support entitlement to such a hearing. As recounted above, the court asked AVG to submit an affidavit setting forth the expenses it incurred in connection with its trial preparation over the days before the original trial date and stated that "[i]f necessary, . . . we can conduct a telephonic hearing on it." Genesis did not request a hearing at the time; nor did it ask for time to respond. Bordo submitted his affidavit on February 7, 2019, and when the court entered its order on February 13, it had heard no opposition from Genesis.

---

[79] See *Holt County Co-op Assn. v. Corkle's, Inc.*, 214 Neb. 762, 336 N.W.2d 312 (1983).

[80] *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017), citing Neb. Ct. R. § 6-101(B)(5) (rev. 2013).

[81] *Connelly v. City of Omaha*, 278 Neb. 311, 769 N.W.2d 394 (2009).

Despite Genesis' inaction prior to the February 13, 2019, order, the court provided Genesis an opportunity to respond to the reasonableness of the expenses claimed by AVG. The court stated that there would not be a "trial" on the matter and that it could be done by affidavit. Genesis' counsel agreed that "typically these are done on affidavit," adding that "there's no use making this more painful." The court then allowed Genesis 7 days to submit any affidavits and any objections to Bordo's affidavit. Here, the court afforded Genesis with a means to be heard regarding the reasonableness of AVG's claimed expenses and considered Genesis' response. No more was required.

### (iii) Objections to Bordo Affidavit

#### a. Specific Objections

Genesis argues that the court failed to consider the myriad specific objections it directed to the affidavit. The court's order stated that it overruled Genesis' objection to Bordo's affidavit and received it as an exhibit. As Genesis correctly observes, the order did not specifically reference Genesis' numerous specific objections and instead added only that Bordo's affidavit met the criteria set out in *Johnson v. Neth*.[82]

At a later hearing, the court stated that it "overruled [Genesis'] objections" in the earlier order. It inquired of Genesis' counsel, "[W]hat you're asking me to do is make a specific ruling on each objection you made . . . ?" Counsel responded: "Right. Or it could be a general denial." The court stated it would "take a look," but added, "[M]y intent was, based on what I had at the time of the February 27th hearing in preparation to issue the March 13th order, I generally overruled any objection . . . ." In a posttrial motion, Genesis asserted that the court erred in failing to rule on each specific objection to Bordo's affidavit. The court overruled the motion.

Genesis has not cited any authority requiring the court to specifically address the merits of each objection to an exhibit.

---

[82] *Johnson v. Neth*, 276 Neb. 886, 758 N.W.2d 395 (2008).

By receiving the affidavit and holding firm to that ruling, the court essentially overruled every objection to the exhibit. We see no abuse of discretion. The court's ruling preserved Genesis' opportunity to appeal from the evidentiary rulings; but Genesis has not assigned and argued error in those rulings except regarding the sufficiency of the certification of an oath or affirmation.

### b. Jurat

[36] Genesis' other argument is directed to the jurat of the affidavit. Under Nebraska law, an affidavit is one mode by which testimony of a witness may be taken.[83] As defined by statute, "[a]n affidavit is a written declaration under oath, made without notice to the adverse party."[84] Oaths and affirmations may be administered by notaries public.[85] In connection with an affidavit, a notary public completes a certificate, known as a jurat, which confirms that the affiant appeared before the notary, attested to the truth of his or her statements, and signed the affidavit.[86] The certificate of a notary public to an affidavit is presumptive evidence of the facts stated in such certificate, including the statement that affiant signed the affidavit.[87] The customary form of a jurat has long been understood.[88] It differs from an acknowledgment.

Bordo executed his affidavit in California. Under Neb. Rev. Stat. § 25-1245 (Reissue 2016) and Neb. Ct. R. Disc. § 6-328(b), an affidavit may be used in support of a motion in a court of this state if the affidavit is made and authenticated, out of state, before a person authorized to administer

---

[83] See Neb. Rev. Stat. § 25-1240 (Reissue 2016).

[84] Neb. Rev. Stat. § 25-1241 (Reissue 2016).

[85] Neb. Rev. Stat. § 64-107.01 (Reissue 2018).

[86] See *In re Interest of Fedalina G.*, 272 Neb. 314, 721 N.W.2d 638 (2006).

[87] *Smith v. Johnson*, 43 Neb. 754, 62 N.W. 217 (1895).

[88] See 1 Winsor C. Moore, Nebraska Practice § 539 (1964) (including both short form and long form).

oaths in the place where the affidavit is made.[89] Attached to the affidavit was an "[a]cknowledgment," in the form authorized by California law,[90] which stated that Bordo "personally appeared" before the notary public. In a certificate of acknowledgment under California law, the notary public certifies that the signer acknowledged executing the document.[91] Like in Nebraska, a notary public in California is authorized by law to administer oaths.[92] In a jurat under California law, the notary public certifies that the signer signed the document in the presence of the notary public and that the notary public administered an oath or affirmation.[93] A California court has said that an "acknowledgment appearing at the end of the document reciting only that [an individual] appeared before a notary public 'and acknowledged that she executed the same' is not in any sense the equivalent of a jurat or of a verification."[94]

Genesis points out that the jurat did not recite that the affidavit was duly sworn to by the party making it. The affidavit began by stating that "Bordo, being first duly sworn, deposes and states as follows . . . ." And the acknowledgment was signed by a notary public. The notary public signed the acknowledgment under penalty of perjury and affixed her notarial seal.

[37,38] But we have stated that the fact that an affiant signed an affidavit in the presence of a notary and that the affiant's signature was in fact notarized is sufficient as an oath or affirmation.[95] Unless required by statute, an omission in a

---

[89] See *In re Interest of Fedalina G., supra* note 86.

[90] See Cal. Civ. Code § 1189 (West 2019).

[91] *Id.*

[92] See Cal. Civ. Proc. Code § 2093(a) (West 2019).

[93] See Cal. Gov't Code § 8202 (West 2015).

[94] *Palm Springs Alpine Estates, Inc. v. Superior Court for Los Angeles Cty.*, 255 Cal. App. 2d 883, 888, 63 Cal. Rptr. 618, 621 (1967).

[95] See *Moyer v. Nebraska Dept. of Motor Vehicles*, 275 Neb. 688, 747 N.W.2d 924 (2008).

jurat that an affidavit was sworn to will not be fatal if the fact otherwise appears.[96] Here, the affidavit states on its face that it was sworn, and it was signed before an official authorized to administer oaths. Although the affidavit was irregular in the sense that an acknowledgment rather than a jurat was attached, Genesis suffered no prejudice. As set forth earlier, the admission of evidence in a civil case is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[97] There is no reversible error here.

While the confusion associated with the distinctions between forms of notarial acts is not prejudicial, it is easily avoidable. A notary public or other authorized officer should use a traditional jurat (long or short) to certify the administration of an oath or affirmation and employ an acknowledgment for documents requiring that type of proof. Both are types of notarial acts, "which the laws and regulations of this state authorize notaries public of this state to perform, including the administering of oaths and affirmations, taking proof of execution and acknowledgments of instruments, and attesting documents."[98] An acknowledgment is the act by which a party who has executed an instrument goes before a competent officer and declares or acknowledges the same as his or her genuine and voluntary act and deed.[99] A statute defines the words typically used in the customary short form of an acknowledgment.[100] Acknowledgments are employed mainly in connection with transactions involving real estate,[101] wills,[102]

---

[96] 2A C.J.S. *Affidavits* § 31 (2013).

[97] See *Weyh v. Gottsch, supra* note 11.

[98] Neb. Rev. Stat. § 64-201 (Reissue 2018).

[99] *McCauley v. Stewart*, 177 Neb. 759, 131 N.W.2d 174 (1964). See, also, 1 Moore, *supra* note 88, § 121.

[100] See Neb. Rev. Stat. § 64-205 (Reissue 2018).

[101] See, e.g., Neb. Rev. Stat. §§ 40-104 (Reissue 2016) and 76-203 through 76-205, 76-211, 76-216, 76-235, and 76-241 (Reissue 2018).

[102] See, e.g., Neb. Rev. Stat. § 30-2329 (Reissue 2016).

powers of attorney,[103] and establishment of a filial relation-ship.[104] Adding to this confusion is the largely historical form of an affidavit described as a verification. Prior to 1969,[105] every pleading of fact in a civil action had to be verified by the affidavit of the party, his or her agent, or attorney.[106] In most instances, it was sufficient if the affidavit stated that the affiant believed the facts stated in the pleading to be true.[107] In some situations, however, the pleading was required to be "positively verified, and a verification based upon mere belief [was] inadequate."[108] The form for a positive verification[109] ended with the word "true,"[110] thereby omitting the words "as he believes" used at the end of the usual verification form.[111] Either version, being a type of affidavit, was followed by the jurat of the officer administering the oath (and not by an acknowledgment).[112] Here, the question could have been avoided by adherence to well-settled and understood lan-guage. As Winston Churchill is reputed to have said: Broadly speaking, the short words are the best, and the old words best of all.

### (iv) Amount of Award

[39] Finally, Genesis argues that the court abused its discre-tion in awarding AVG $69,179.19. A court abuses its discretion

---

[103] See, e.g., Neb. Rev. Stat. § 30-4005 (Reissue 2016).

[104] See, e.g., Neb. Rev. Stat. §§ 43-1408.01 and 43-1409 (Reissue 2016).

[105] See 1969 Neb. Laws, L.B. 375.

[106] See Neb. Rev. Stat. § 25-824 (1943).

[107] See, Neb. Rev. Stat. § 25-827 (1943); *Harden v. A. & N. R. R.*, 4 Neb. 521 (1876).

[108] *State ex rel. Van Cleave v. City of No. Platte*, 213 Neb. 426, 429, 329 N.W.2d 358, 360 (1983).

[109] See 7 Winsor C. Moore, Nebraska Practice § 5813 (1967).

[110] *Id.*

[111] *Id.*, § 5805.

[112] *Id.*, §§ 5805 and 5813.

when its decision is based upon reasons that are *untenable* or *unreasonable* or if its action is *clearly* against justice or conscience, reason, and evidence.[113] As we have previously observed, "[t]his is a fairly deferential standard."[114]

Genesis challenges the amount of the awards for AVG's chief financial officer and chief operating officer, asserting that any reimbursement should be based on statutory witness fees. It further contends that the court abused its discretion in awarding the attorneys their hourly rate and that a reasonable hourly rate would be the local hourly rate.

Before agreeing to grant a continuance, the court made clear that it would award AVG its actual expenses. In other words, payment of those expenses was a condition required to obtain the continuance. The court cogently explained that "[i]t would be inequitable for [AVG] to have incurred these expenses to appear at trial as ordered by the Court, only to have the trial continued because [Genesis], on the eve of trial . . . fired its attorney for reasons still largely unknown." To award AVG only a statutory witness fee or an Omaha attorney's prevailing hourly rate would frustrate the purpose of the award.

The record does not show that the court rendered its award for any reasons that were untenable or unreasonable. Rather, "the record reflects that the court carefully considered its decision and sought to achieve a balanced outcome for both parties."[115] The court's decision allowed Genesis the continuance it desired for new counsel to prepare for trial, and it reimbursed AVG for its expenses incurred to be present and ready for the scheduled trial. Although the court's award was substantial, it represented the significant costs that AVG suffered. Under the circumstances, the court's award was not untenable or unreasonable.

---

[113] See *Putnam v. Scherbring, supra* note 80.

[114] *Id.* at 878, 902 N.W.2d at 146.

[115] *Id.* at 878, 902 N.W.2d at 147.

### 6. AVG's Cross-Appeal

[40] On cross-appeal, AVG assigns that the court erred in sustaining Genesis' hearsay objection to exhibit 132, a 2017 Delaware lawsuit that 24 Hour Fitness USA filed against Genesis Health Clubs of Midwest. Because we are affirming the judgment in AVG's favor, we need not resolve this issue. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[116]

### VI. CONCLUSION

As landlord, AVG had standing in this action for breach of written leases and was not required to produce the actual assignment of the leases in order to prevail. We find no error in the award of prejudgment interest under § 45-104 or in the special verdicts awarding late fees associated with tardy rent payments and penalties in the form of interest and advertising in connection with delinquent property taxes. Further, the court had inherent authority to award AVG its actual expenses as a condition of sustaining Genesis' motion for continuance of trial. Finding no abuse of discretion or reversible error in any of the respects alleged, we affirm the judgment of the district court.

AFFIRMED.

MILLER-LERMAN, J., not participating.

---

[116] *Saylor v. State*, 304 Neb. 779, 936 N.W.2d 924 (2020).