IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


KLEIN V. KLEIN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MARCENE KLEIN AND EUGENE KLEIN, BY MICHAEL KLEIN
AND SHARON KLEIN, COCONSERVATORS, APPELLEES,

V.

LEWIS KLEIN, APPELLANT.


Filed January 24, 2023.    No. A-22-241.


Appeal from the District Court for Cass County: MICHAEL A. SMITH, Judge. Affirmed as modified.

Rodney C. Dahlquist, Jr., of Dornan, Troia, Howard, Breitkreutz, Conway & Dahlquist, P.C., L.L.O., for appellant.

Julie E. Bear, of Reinsch, Slattery, Bear, Minahan & Prickett, P.C., L.L.O., for appellees.


PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Marcene Klein and Eugene Klein, by Michael Klein and Sharon Klein, coconservators for Eugene (collectively "the Kleins"), filed a complaint in the district court for Cass County against Lewis Klein for, among other things, his ongoing use of their grain bins without permission or rental payments. After a bench trial, the district court found that Lewis was unjustly enriched by his ongoing use of the Kleins' grain bins. The court awarded the Kleins damages on their unjust enrichment claim. However, the court offset these damages after finding that the Kleins had sold some of Lewis' crops stored in the grain bins without providing him any compensation. Lewis appeals the district court's order. Upon our review, we affirm as modified.

- 1 -

## II. BACKGROUND

Eugene, age 91, and Marcene, age 85, are husband and wife who share 12 children: John, Theresa, Michael, Joe, George, Nancy, Cecil, Aaron, Lewis, Mary, Janet, and Sharon. Eugene and Marcene have been engaged in a farming practice throughout their 64-year marriage.

Together, Eugene and Marcene own one parcel of land, referred to in the record as "dad's place." Dad's place consists of approximately 500 acres of land and contains six grain storage bins. Eugene and Marcene share ownership of another parcel of land, referred to in the record as "grandpa's place," with their niece. Eugene and Marcene have leased their niece's half interest in this land in recent years. Grandpa's place consists of approximately 440 acres and contains seven grain storage bins. Michael estimated that approximately one-half to two-thirds of all the land on dad's place and grandpa's place is tillable farm ground.

Lewis testified that he had been helping Eugene farm the two parcels for at least the last 30 years since he graduated from high school. However, in March 2016, Michael assumed control over Eugene's part of the family farm operation, including becoming the farm tenant for a portion of dad's place. This change occurred after Michael began investigating Eugene's finances and found indications that Eugene was not being adequately compensated for the use of the farmland by Lewis and Cecil, who had by that time essentially taken over Eugene's farming operation as Eugene grew older. Ultimately, in April 2018, Michael and Sharon were formally appointed as coconservators for Eugene.

When Michael became the farm tenant for a portion of dad's place, his lease agreement specifically included the use of the grain storage bins which are located on the parcel leased. However, in March 2016, when Michael signed his first lease with Eugene and Marcene, all six of the grain bins were being utilized by Lewis. Michael testified that he continued to pay the full amount of rent for his use of the leased property to Eugene and Marcene, despite his inability to use the grain bins.

Michael testified to the arrangement his parents have with their niece (his cousin) regarding grandpa's place. Eugene and Marcene own a half interest and then lease their niece's half interest. The cropland is "custom farmed." None of the Klein children are to use the buildings, including the grain bins, for their own benefit. However, Lewis has been using some of the grain storage bins on grandpa's place to store his crops. Lewis admitted that as of December 2021, he was still using at least a portion of three of the seven grain bins on grandpa's place, but prior to that time, he had utilized more of the bins.

On March 2, 2018, the attorney for the conservators sent Lewis a letter demanding that he remove his crops from the grain bins on both dad's place and grandpa's place. The letter stated, in pertinent part:

> The Conservators indicate that they have previously requested that you remove any existing grain in storage on farm property which is owned by your mother and father but that you have refused to so remove the same.
>
> Please be advised that the Conservators along with your mother, Marcene, hereby demand the removal of all grain in storage and that the same be completed within 15 days of this correspondence.
>
> . . . .

Please note that your failure to comply with this demand will result in the grain in storage being removed and disposed of by the Conservators in a commercially reasonable manner along with any further action deemed legally appropriate by the Conservators.

Despite this demand, Lewis continued to utilize the grain bins on dad's place until at least November 2018. And, as stated above, Lewis continued to utilize at least three bins located on grandpa's place as late as December 2021.

In February 2020, the Kleins filed an amended complaint which asserted that Lewis had been unjustly enriched through his use of Eugene and Marcene's grain bins without payment or permission. The Kleins further alleged that they had lost the use of their grain bins from March 1, 2016, through the time of their filing. They requested that Lewis be ordered to reimburse them for the fair and reasonable value of the grain storage. We note that the Kleins' amended complaint raised two other causes of action. Those claims requested the court to determine ownership of disputed livestock and farm equipment between Lewis and the Kleins and requested an order requiring Lewis to remove all equipment determined to belong to him from the Kleins' property. However, the only issue before us in this appeal relates to Lewis' use of the grain storage bins.

In March 2020, Lewis filed an answer to the Kleins' amended complaint, which included a counterclaim. In his answer, Lewis generally denied that he owed the Kleins any amount of money for his ongoing use of the grain storage bins. He asserted that he had an oral contract with Eugene and Marcene to utilize the grain storage bins for the storage of his crops. As part of his counterclaim, Lewis alleged that the Kleins owed him money as a result of them selling approximately 16,000 bushels of his corn that had been stored in the grain bins on dad's place. Lewis alleged that the Kleins retained and converted the proceeds from that sale even though the corn was his property. Lewis also alleged further causes of action related to land, livestock, and equipment which are not relevant to this appeal.

A bench trial was held on the Kleins' amended complaint and on Lewis' counterclaim beginning on November 12, 2021, and continuing on December 30. A further summary of the evidence presented at trial will be provided, as needed, in the analysis section below.

On February 23, 2022, the district court entered an order finding "generally in favor of the [Kleins]." In the order, the court found that while there was some evidence that Lewis had received permission to utilize the grain bins at some point in time, any such permission was revoked in March 2018 when he received a letter from the conservators' attorney demanding that he remove his crops from Eugene's and Marcene's grain bins. The court explained, "There is no credible evidence to support any contention by [Lewis] that he had a right to continue to occupy the grain bins after that date." The court calculated damages beginning on May 1, 2018, approximately one month after Lewis was told to vacate the bins, and ending on various dates corresponding to when Lewis had removed his crops from each bin. Based upon Michael's testimony, the court then found that a fair price for grain storage was $.05 per bushel per month. The court ordered Lewis to pay the Kleins $12,950 for his use of the grain storage bins on dad's place and $107,500 for his use of the grain storage bins on grandpa's place, for a total of $120,450.

In its order, the district court did find in favor of Lewis on his counterclaim for conversion regarding the Kleins' selling of his corn and retaining the proceeds of that sale. The court found that the proceeds from the corn sale totaled $44,272.97. However, the court found that the Kleins

were entitled to $.50 per bushel for the cost of transporting the corn to the grain facility which ultimately sold the corn. Such cost amounted to $7,361 and was deducted from the proceeds of the sale. As such, Lewis was entitled to $36,911.37 for the sale of his corn. The court ordered that the $36,911.37 owed to Lewis by the Kleins "will be used to offset other amounts owed by [Lewis] to [the Kleins]." The "other amounts" owed by Lewis also included a $10,000 judgment for money retained by Lewis following the sale of calves belonging to the Kleins.

Lewis appeals from the district court's order here.

## III. ASSIGNMENTS OF ERROR

On appeal, Lewis assigns as error the district court's judgment in favor of the Kleins on their unjust enrichment claim as to the grain bins on dad's place, because the evidence showed that the Kleins had received full payment for the use of those grain bins pursuant to their lease agreement with Michael. Lewis also assigns as error that the district court improperly calculated the damages awarded to the Kleins for his ongoing use of the grain bins on both dad's place and grandpa's place. In addition, Lewis asserts that the district court incorrectly calculated the damages the Kleins owed to him for their conversion of a portion of his crops which had been stored in the grain bins.

## IV. STANDARD OF REVIEW

Any quasi-contract claim for restitution is an action at law. *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 290 Neb. 798, 862 N.W.2d 294 (2015). The judgment and factual findings of the trial court in an action at law tried to the court without a jury have the effect of a verdict and will not be set aside unless clearly wrong. *Id.* In reviewing an action at law, an appellate court reviews the evidence in the light most favorable to the prevailing party. *Id.* However, regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the lower courts. *Id.*

The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved. *Dietzel Enters. Inc. v. J.A. Wever Constr.*, 312 Neb. 426, 979 N.W.2d 517 (2022).

## V. ANALYSIS

### 1. FINDING OF UNJUST ENRICHMENT AS TO LEWIS' USE OF GRAIN BINS ON DAD'S PLACE

In Lewis' first assignment of error, he alleges that the district court erred in entering a judgment for unjust enrichment against him for his use of the storage bins located on dad's place. Specifically, Lewis asserts, "[t]he district court erred by entering judgment against Lewis for unjust enrichment for using Dad's Place bins because the conservators received payment for the use of the very same bins under an express contract." Brief for appellant at 13. Lewis argues that if he is ordered to pay rent to the Kleins for the use of the storage bins, that the Kleins will be "permitted a windfall 'double recovery.'" *Id*. at 14. Upon our review, we find evidence to establish that the Kleins did incur damages because of Lewis' ongoing use of the grain storage bins on dad's place.

- 4 -

As such, we affirm the district court's decision to enter a judgment against Lewis and in favor of the Kleins for his use of those storage bins.

In its order, the district court found that Lewis had been unjustly enriched through his use of the grain storage bins on dad's place without permission or the payment of any storage fees. The court ordered Lewis to pay rent to the Kleins for use of four of the five grain bins from May 1, 2018, through November 1, 2018, and for use of the fifth bin from May 1, 2018, through October 1, 2018. To recover on a claim of unjust enrichment, the plaintiff must show that (1) the defendant received money or a benefit, (2) the defendant retained possession of the money or benefit, and (3) the defendant in justice and fairness ought to compensate the plaintiff. See *Kanne v. Visa U.S.A.*, 272 Neb. 489, 723 N.W.2d 293 (2006).

Here, Lewis does not contest that his use of the grain bins on dad's place constituted a benefit he retained without payment to the Kleins. However, he contests whether justice and fairness requires him to reimburse the Kleins for this benefit. In support of his argument, Lewis points to evidence in the record which establishes that even while he utilized the grain bins on dad's place during 2018, Michael, as the farm tenant, was paying the full amount of cash rent for dad's place to Eugene and Marcene under his lease. The lease provided specifically that the grain bins were included in the property leased. Stated another way, according to Lewis, Michael fully compensated Eugene and Marcene for the use of the grain bins even though Michael did not have access to all the bins due to Lewis storing grain in at least some of them. Lewis argues that when the district court ordered him to pay storage fees to the Kleins for his use of the grain bins, that such award resulted in the Kleins obtaining a double recovery.

Contrary to Lewis' arguments, there is evidence in the record which affirmatively indicates that the Kleins repaid Michael for his loss of use of the grain storage bins during the lease period.

Exhibit 23 was offered by Lewis at the end of the trial. This exhibit is Lewis' second request for production of documents to the Kleins and the Kleins' answers to those requests. Request No. 13 asks the Kleins to produce all documents to support their claim of unjust enrichment as to the storage bins on dad's place. The Kleins' response states:

Please see the attached farm lease and checks written to the farm tenant for loss of storage as follows:

| | |
|---|---|
| Check #4597 9-27-18 | $13,000 |
| Check #4580 10-9-18 | $11,000 |
| Check #4625 1-3-19 | $8,500 |

We note that while the farm leases between Michael and his parents are attached to this exhibit, the copies of the checks are not. However, exhibit 23 appears to indicate that during 2018, at least some of the rent paid by Michael to the Kleins was reimbursed by the Kleins due to the unavailability of the bins for Michael's use. This unavailability was due to the presence of Lewis' grain in the grain bins. In fact, at oral argument neither counsel for Lewis nor counsel for the Kleins disputed that exhibit 23 provided clear evidence of the Kleins' reimbursement to Michael. As such, exhibit 23 provides clear evidence that the Kleins suffered damages because of Lewis' continued use of the grain bins. They did not receive rent for the grain storage bins from Michael, as Lewis asserts on appeal. There is no error in the district court's decision to order Lewis to pay a judgment for his use of the grain bins on dad's place to the Kleins.

## 2. CALCULATION OF DAMAGES FOR LEWIS' USE OF GRAIN BINS

Lewis next argues that the district court erred in calculating the amount of the judgment he was required to pay to the Kleins because of his ongoing use of the grain storage bins on dad's place and on grandpa's place. First, he asserts that the court should not have accepted Michael's testimony about monthly storage fees. Second, he argues that the court incorrectly found that he was utilizing all seven of the grain bins on grandpa's place to store his crops when the evidence clearly indicated he was only using three of the bins. Third, he argues that the court should have calculated the judgment using the actual amount of crops he had stored in the grain bins, rather than the maximum capacity of each grain bin. We address each argument, in turn.

### (a) Calculation of Storage Fee

At trial, Michael testified to his belief that the current fair market value for grain storage was $.05 per bushel per month. Michael explained that this is the storage fee he has paid to third-party grain facilities to store his crops. However, Michael also conceded that a farm tenant would not be charged $.05 per bushel per month in storage fees, as the use of the storage bins is often included in the amount of rent paid for the land. Sharon, the coconservator for Eugene, testified that she agreed with Michael about the current fair market value for grain storage being $.05 per bushel per month.

During his trial testimony, Lewis did not necessarily contest Michael and Sharon's opinion about the current fair market value for grain storage. He opined that the average price per bushel for commercial grain storage is anywhere from three to five cents per bushel per month. However, Lewis did contest whether the fees for storing grain in the bins on the farm should be charged at the same rate as that charged by commercial grain storage facilities. Lewis testified that the fair market value of the storage bins on dad's place and on grandpa's place should be the same regardless of whether the bins were being utilized by a farm tenant or by a third-party farmer. Essentially, Lewis believed that there was no basis to distinguish between his use of the grain bins and a farm tenant who leased the bins in conjunction with the farmland they sit on. He opined that the bins had no fair market value.

Ultimately, the district court found Michael's and Sharon's testimony regarding the current fair market value of grain storage to be credible. When calculating the amount of rent Lewis owed to the Kleins for the use of the storage bins on grandpa's place, the court used a rental value of $.05 per bushel per month. On appeal, Lewis challenges the district court's finding regarding the current fair market value for grain storage.

In his brief on appeal, Lewis argues that the actual fair market value for use of the storage bins on dad's place and on grandpa's place should be $.00 per bushel per month, and that the judgment entered against him for his use of the storage bins should be vacated. In support of this argument, Lewis again points to Michael's testimony that a farm tenant would not pay the current fair market value for grain storage because such costs would be wrapped into their rent for the land. Lewis also points to testimony that Michael provided to the court during the previous conservatorship proceedings about the limited value of the grain bins to anyone besides a farm tenant.

Essentially, Lewis' argument regarding the district court's finding as to the current fair market value of grain storage asks us to reexamine the court's finding that Michael and Sharon's

opinion on this topic was credible. In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748 N.W.2d 1 (2008). An appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error. *Id.* Upon our review, we find that Michael's and Sharon's testimony, which the district court found to be credible, provides support for the district court's decision that the fair market value of grain storage to be charged to Lewis was $.05 per bushel per month. As such, we affirm the district court's decision in this regard.

### (b) Number of Bins Used by Lewis on Grandpa's Place

At trial, Michael testified that there were seven grain storage bins located on grandpa's place. Michael believed that the combined capacity of the seven bins was approximately 50,000 bushels. He testified that the capacity of each of the seven bins was as follows: 10,000 bushels, 9,000 bushels, 8,000 bushels, 7,500 bushels, 6,000 bushels, 5,000 bushels, and 5,000 bushels. Michael was clear that by the time of trial, Lewis was only storing his crops in three of the seven bins at grandpa's place. However, Michael did indicate that in the year or so prior to trial, Lewis was using at least an additional two bins. Michael did not testify as to which three of the seven bins Lewis continued to utilize.

Lewis' testimony was somewhat similar to Michael's testimony. Lewis agreed that by the time of trial he had crops stored in three grain bins on grandpa's place. He indicated that two of the bins he occupied were full and one was "probably half full." Lewis indicated that two of the bins he was storing crops in had a capacity of 7,000 bushels and the other bin had a capacity of 10,000 bushels, so that the maximum amount of crops he was currently storing was 24,000 bushels. However, Lewis admitted that previously he had been utilizing more than three of the bins on grandpa's place: "Probably occupied them all at one time or another."

In the district court's order, it calculated the rental fees Lewis owed to the Kleins for his use of the storage bins on grandpa's place from May 1, 2018 ("one month rounded after the notice to vacate"), through January 1, 2022, the first day of the month after the trial ended, for a total of 43 months. We do note that the court's order includes a clerical error. The court indicates that it stopped the rental period on January 1, 2021, but the surrounding context makes it clear that the court meant to stop the period on January 1, 2022.

In making its calculation of the storage fees Lewis owed to the Kleins for his use of the grain bins on grandpa's place, the court found that Lewis had been utilizing 50,000 bushels of storage capacity during this period, which, according to Michael, encompassed all seven of the storage bins on grandpa's place. On appeal, Lewis challenges the court's finding that he was still using all seven storage bins by the time of trial, when the evidence clearly indicated he was only using three of the bins. Upon our review, we find that Lewis' contention has merit.

The parties agree that by the time of trial in late 2021, Lewis had crops in only three of the seven bins located on grandpa's place. And, while the parties also agree that Lewis was previously utilizing more of the grain bins, neither party provided a specific period of time for this additional usage. As such, there is no clear evidence that Lewis used more than three of the bins on grandpa's place at any given time after May 1, 2018, which is the date the district court began calculating the owed rental payments. Additionally, while Michael testified that Lewis was only using three

storage bins by the time of trial, he did not specify which bins Lewis continued to utilize. As such, he did not provide any evidence about the storage capacity of those bins. However, according to Michael's testimony, at most, Lewis was utilizing 27,000 bushels of storage capacity at the time of trial. According to Michael's testimony the capacity of the three largest storage bins were 10,000 bushels, 9,000 bushels, and 8,000 bushels. The only specific evidence pertaining to which bins Lewis continued to occupy was from Lewis, himself. He conceded that he was continuing to use three grain bins with a total storage capacity of 24,000 bushels.

Upon our review, we conclude that the district court erred in finding that Lewis should pay storage fees for 50,000 bushels of grain on grandpa's place from May 1, 2018, through January 1, 2022. The evidence simply does not support the district court's finding that Lewis continually used all seven bins during the entirety of the applicable period. And, given the Kleins' failure to prove which of the three bins Lewis was continuing to use by the time of trial, we find that Lewis should only be required to pay rental fees on 24,000 bushels of storage space from May 1, 2018, through January 1, 2022. This is the amount of storage space Lewis admitted to continuing to utilize.

Given our findings, we amend the district court's order to require Lewis to pay $51,600 in storage fees for his ongoing use of three grain storage bins on grandpa's place. Such amount was calculated using a maximum storage capacity of 24,000 bushels used for 43 months at a rental cost of $.05 per bushel per month. Our calculation results in a reduction of $55,900 of the total amount of storage fees owed to the Kleins by Lewis.

(c) Use of Maximum Bin Storage Capacity

During his trial testimony, Michael explained that crops should not be "comingle[d]" with other crops, such that if Lewis had any crops in a grain storage bin, that bin would be unusable for anyone else's crops. Michael further indicated that comingling grain from two separate owners would "create issues in terms of ownership and who owns what and the condition of the grain and all those sorts of questions." Lewis did not directly contradict Michael's testimony about comingling of crops during his testimony. However, on appeal, he asserts that "when calculating the judgment, Lewis should be charged only for his actual usage of the bins, i.e., bushels that he actually stored in the grain bins, not the full-boat maximum capacity of those bins." Brief for appellant at 17.

Upon our review, we reject Lewis' contention that he should only be charged rental fees associated with the actual number of bushels of crops he had stored in a grain bin. Michael's uncontested testimony at trial clearly indicates that crops should not be comingled. As such, Lewis' use of any portion of a grain storage bin to store his crops would preclude anyone else from utilizing that storage bin. We conclude, as we found above, that Lewis should pay storage fees for the maximum storage capacity of the three grain bins he continued to utilize on grandpa's place, which we calculated above to total 24,000 bushels. In addition, we find no error in the district court's decision to calculate the storage fees owed by Lewis for his use of the grain storage bins on dad's place using the maximum capacity of each of the five storage bins. Lewis does not contest on appeal that he utilized all five bins on dad's place during the relevant time period.

### 3. CALCULATION OF AMOUNT OWED TO LEWIS FOR SALE OF CORN

Evidence presented at trial revealed that in October or November 2018, Lewis was storing 14,723.23 bushels of yellow corn in a 16,000 bushel grain bin on dad's place. Michael wanted to be able to utilize this bin to store his own crops, so he removed Lewis' corn and had it transported to a grain facility in Nebraska City, where it was stored for one year and then automatically sold. Michael indicated that the price obtained for the corn was affected by the corn having been already stored by Lewis for four to five years and by the damage to the corn, including moisture damage and bug infestation. In addition, the grain facility retained $9,369.90 from the total sale price of the corn for its one-year storage fee. Michael testified that the proceeds received from the sale of the corn was $44,272.97. He deposited this amount into the conservatorship bank account. Michael did note that the Kleins also incurred an expense for transporting the corn to the grain facility. He estimated this cost to be $.50 per bushel of corn, or a total of $7,361.62.

In the district court's February 23, 2022 order, it found that Lewis was entitled to the proceeds of the sale of his corn. However, the court also found that the Kleins were entitled to $.50 per bushel for the cost of transporting the grain to the grain facility in Nebraska City. The court calculated the transport expenses to be $7,361. The court subtracted this amount from the $44,272.97 in sale proceeds, which had been retained by the Kleins. As such, Lewis was awarded $36,911 for the sale of his corn.

On appeal, Lewis argues that the district court "erred by reducing such judgment by the hauling fee charged by the conservator, the storage fee charged by [the grain facility] and by failing to impose interest from the date of sale." Brief for appellant at 19.

We first note that in our review of Lewis' brief to this court, his assignments of error pertaining to this issue do not precisely correspond to his argument on the issue. The assignments of error section of his brief lists three assigned errors regarding the district court's calculation of the judgment entered against the Kleins and in favor of Lewis: that the court erred in reducing the judgment in favor of Lewis by the storage charge incurred; that the court erred in reducing the judgment in favor of Lewis by the transportation costs incurred; and that the court erred in failing to award prejudgment interest on the judgment pursuant to Neb. Rev. Stat. § 45-104 (Reissue 2021). However, the argument section of Lewis' brief includes just one argument on this issue: that the district court erred in calculating the judgment in favor of Lewis. In this section, Lewis focuses his argument almost exclusively on the court's failure to award prejudgment interest on the judgment. Lewis' argument regarding the reduction of the judgment by the storage and transportation charges incurred provides no support for his general assertion that he should not be responsible for paying these amounts.

Assuming without deciding that Lewis has properly preserved all three arguments regarding the judgment entered against the Kleins, we find that such arguments do not have merit. The evidence presented at trial clearly demonstrated that Lewis was informed by a letter from the conservatorship dated March 2, 2018, that if he did not remove his crops from the storage bins owned by Eugene and Marcene within 15 days, that such crops would be removed and disposed of in a commercially reasonable manner. More than seven months later, the conservatorship did, in fact, remove nearly all of Lewis' corn from a grain bin, had it stored, and then sold. Michael provided evidence regarding the costs associated with such storage and sale, including transporting

the corn to the grain facility and storing that corn for one year prior to its sale. The court did not err in subtracting from the proceeds of the sale awarded to Lewis $9,369.90 for the storage of the corn at the grain facility and $7,361 for transporting the corn from dad's place to the grain facility.

Furthermore, as argued in the Kleins' brief to this court, Lewis never requested the district court to award him prejudgment interest either in his counterclaim or during the trial. As such, this appeal appears to be the first time that Lewis has raised the issue of whether he is entitled to prejudgment interest.

In Lewis' counterclaim, he requests that the district court award him the proceeds from the sale of his corn which has been unlawfully retained by the Kleins. Lewis then asks the court "for such other relief as the Court deems just and equitable." In a recent Nebraska Supreme Court case, the court addressed whether a party's failure to explicitly request prejudgment interest in a pleading prevented any award of prejudgment interest. See *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020). Therein, the court cited to Neb. Ct. R. Pldg. § 6-1108(a), which states, in part, "If the recovery of money be demanded, the amount of special damages shall be stated but the amount of general damages shall not be stated; and if interest thereon be claimed, the time from which interest is to be computed shall also be stated." Despite this language, the court explained, "Specifically requesting interest in the complaint is encouraged, because it clearly puts the opposing party on notice. But compliance with § 6-1108(a) is not determinative where entitlement to interest is based on statute and the adverse party had notice and an opportunity to be heard prior to judgment." *AVG Partners I v. Genesis Health Clubs*, 307 Neb. at 64, 948 N.W.2d at 230. The court went on to find that the prejudgment interest awarded by the district court was supported by statute and that "prejudgment interest was the subject of extensive argument prior to judgment." *Id*. Accordingly, the Supreme Court upheld the district court's award of prejudgment interest notwithstanding the failure of appellee to specifically request prejudgment interest in its complaint. *Id*. See also *In re Estate of Adelung*, 312 Neb. 647, 980 N.W.2d 415 (2022) (finding no error in district court's failure to award prejudgment interest where there was no compliance with § 6-1108 and no notice on issue of prejudgment interest prior to entry of judgment).

Our case can be distinguished from the facts of *AVG Partners I v. Genesis Health Clubs, supra*. In this case, not only did Lewis fail to specifically request prejudgment interest pursuant to § 6-1108(a), but he also failed to raise the issue at trial. As such, it was not litigated. In fact, during Lewis' trial testimony, he indicates the precise amount he believes he is owed from the Kleins' sale of his corn. Such amount does not include any award of prejudgment interest. So, unlike the facts of *AVG Partners*, prejudgment interest was not brought to either the district court's attention or the attention of the Kleins prior to the entry of the final judgment.

Because the issue of prejudgment interest was not raised below, the Kleins did not have timely notice of such request, nor did they have an opportunity to argue against such an award. As such, we can find no error in the district court's failure to award Lewis with prejudgment interest on the proceeds for the sale of his corn. We affirm the district court's award to Lewis of $36,911.37 for the sale of his corn by the Kleins.

### 4. FINAL CALCULATION OF JUDGMENT REGARDING GRAIN STORAGE

Given our findings above, we recalculate the amount Lewis owes for his use of the grain storage bins as follows. For the bins located on dad's place, we affirm the decision of the district

court ordering Lewis to pay the Kleins $12,950 for his ongoing use of the five grain bins during 2018. For the bins located on grandpa's place, we recalculate the judgment entered against Lewis by the district court, given our finding that the evidence established only that Lewis was continuing to utilize three of the bins. Based upon our calculations above, Lewis owes the Kleins $51,600 in storage fees, rather than the $107,500 in fees calculated by the district court. Thus, Lewis owes to the Kleins a total of $64,550 for storage fees. However, this amount is reduced by the $36,911.37 that the Kleins owe to Lewis for the sale of his corn. As such, Lewis owes the Kleins $27,638.63.

While we recognize that the district court awarded various other judgments in its order, those judgments have not been appealed to this court and, thus remain unchanged.

## VI. CONCLUSION

Upon our review, we find that the district court did not err in awarding the Kleins damages for Lewis' use of the grain storage bins on dad's place. We affirm the district court's calculation of the amount of grain storage fees owed by Lewis to the Kleins except that we find that Lewis only utilized three of the grain storage bins on grandpa's place, rather than all seven of the bins as the district court found. We also affirm the district court's calculation of the amount the Kleins owed to Lewis for the sale of his corn. Offsetting the amount the Kleins owe to Lewis from the amount Lewis owes the Kleins, we find that Lewis should pay the Kleins $27,638.63.

AFFIRMED AS MODIFIED.