IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KRIEGER V. TEUT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ANDREW J. KRIEGER, APPELLANT,

V.

ASHLEY C. TEUT, APPELLEE.

Filed January 2, 2024.    No. A-22-586.

Appeal from the District Court for Douglas County: TRESSA M. ALIOTH, Judge. Affirmed.

Andrea Finegan McChesney, of M | F Law Omaha, for appellant.

Renee L. Mathias, of Berry Law Firm, for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Andrew J. Krieger filed a "Complaint to Establish Paternity, Custody and Support" against Ashley C. Teut in the Douglas County District Court in March 2017. Andrew and Ashley negotiated an agreement, the terms of which were put on the record during a hearing in April 2019. Although Andrew and Ashley stipulated to joint legal and physical custody of the children, the parties nevertheless agreed that when determining child support, they would use "Worksheet 1," the basic income and support calculation, rather than "Worksheet 3," the joint physical custody calculation. The parties were to submit a proposed decree and child support calculation consistent with the agreement made on the record. However, nothing was submitted to the district court.

More than 3 years later, another hearing took place in July 2022, before a different district court judge. Immediately thereafter, the district court entered a "Decree of Paternity, Custody, Support and Visitation." Among other things, it found Andrew to be the father of the parties' two children, granted Andrew and Ashley joint legal and physical custody of the children, and required

- 1 -

Andrew to pay child support in an amount calculated using Worksheet 1. Andrew appeals from the decree, claiming errors related to the court's calculation of child support. We affirm.

## II. BACKGROUND

### 1. COMPLAINT AND TEMPORARY ORDER

Andrew and Ashley never married but were in an intimate relationship for several years, during which time they had two children. Their relationship ended, and in March 2017, Andrew filed a "Complaint to Establish Paternity, Custody and Support," wherein he alleged that he was the biological father of the children and that they had resided with Ashley and him since birth. He requested joint legal and physical custody of the children. Ashley's "Answer & Cross-Complaint for Paternity, Custody & Support," admitted that Andrew was the biological father of the children. She further alleged that there was "a current [p]rotection [o]rder in Douglas County" and that Andrew had been charged with third degree domestic assault and two counts of child abuse. Ashley requested sole legal and physical custody of the children.

The district court entered a temporary order on May 19, 2017. The order indicated that the parties stipulated to the protection order against Andrew being amended to not include the parties' children. The court temporarily granted Ashley sole legal and physical custody of the children, subject to Andrew's supervised parenting time. The order further required that Andrew complete an anger management course and ordered him to pay child support of $1,483 per month for the two children. The attached child support calculation showed that Ashley's monthly gross income was $1,560 and Andrew's monthly gross income was $8,760. The court also addressed the parties' obligations regarding the children's healthcare and daycare expenses.

### 2. APRIL 2019 TRIAL STIPULATION

Trial was scheduled for April 23, 2019; however, the parties informed the district court that they had reached an agreement and wished to read it into the record. Among other things, the parties indicated that they had agreed to joint legal and physical custody. They further agreed that Andrew would "pay child support pursuant to . . . Worksheet [1]," instead of Worksheet 3. The parties indicated that they would exchange certain documents before finalizing the child support calculation and submitting it to the court. The parties were each sworn in and testified that they understood that they could have had a trial rather than negotiating an agreement and that they were satisfied with the terms of the agreement. The court "applaud[ed]" the parties for "working this out," and informed them that "it's done." The court further stated on the record that it found the agreement to be "in the best interest of the children" and that it approved it and would "sign it" when the attorneys provided it to the court. When asked who was "drafting the decree," Ashley's counsel responded that she would.

### 3. HEARING ON FEBRUARY 4, 2022

On February 4, 2022, the district court held a hearing on a motion filed by Andrew requesting that the court enter a decree based upon the agreement reflected in the record of the April 23, 2019, hearing. However, Andrew argued that the court should not rely upon the agreement of the parties that "Worksheet 1" be utilized to calculate child support because he had relied on Ashley's alleged misrepresentation of her income in reaching that agreement. In support

of his claim, he provided the court with a document from a bank account belonging to Ashley which listed the deposits made to the account from October 2018 to October 2019. The statement, which was received into evidence, showed that during that period, Ashley made a deposit in the amount of $51,000, identified in Ashley's handwriting as "Non Income – Car Purch Loan," and another in the amount of $325,000, identified as "Non Income Personal Home loan." Further, counsel contended that the $1,187 in child support that Ashley received for other children (different fathers) should be included as tax exempt income when calculating support. Andrew's counsel argued, "[I]t's been the issue from the get go with regard to [Andrew] providing all of his income information" and "that's just not been the same with [Ashley]." Counsel claimed "that is why there's been this huge delay in getting this decree finalized."

Ashley's counsel said that "we have been actively trying to get this decree" and that "[b]oth parties have some fault for how we got here today." However, counsel claimed that while Ashley provided income documentation, nothing had been received from Andrew. Further, Ashley's counsel expressed opposition to using Worksheet 3 rather than Worksheet 1. She stated that the parties "came into [the agreement] with good faith in negotiating." She pointed out that at the time of negotiations, Andrew had supervised visitation and had to participate in a batterer's intervention program and was facing jail time for a previous domestic assault conviction. Ashley's counsel claimed that the parties "negotiated the [use of] Worksheet 1 as part of a global settlement." However, she expressed that she was willing to have an evidentiary hearing "to get the correct numbers," so long as child support was calculated using Worksheet 1, since that "was negotiated." Ashley's counsel also informed the court that Ashley would be able to testify that the large deposits were loans from a third party, and that there were no "super-secret jobs" that Andrew's attorney was claiming she had. Counsel stated, "The income that she has is what was provided."

The district court stated that it found "itself in a position where this was proved up on the record in 2019," but "it's now 2022, and circumstances between the parties have changed." The court then suggested that it may be appropriate for the matter to be "reset for mediation and negotiations or set for trial," rather than "trying to go back to a transcript and then add to that transcript things that have happened from the time [a decree] should have been entered." The court indicated that it would review the record, the transcript of the 2019 hearing, and the proposed decrees to determine whether a hearing was necessary. On April 15, 2022, the court entered an order finding that neither of the parties' proposed decrees fully aligned with the agreement described at the 2019 hearing, and "[w]ithout an accurate representation of that agreement proposed by the parties, the Court will set this matter for trial." The court denied the motion to enter a decree and scheduled trial to take place on July 6, 2022.

### 4. July 2022 Hearing

#### (a) Agreement on Purpose of Hearing

At the commencement of the hearing on July 6, 2022, the district court stated:

This matter was scheduled today initially for a trial but then it was pre-trialed, and the Court, having [spoken] with Counsel and reviewed the prior record in this case, gave direction to Counsel with regards to the Court's review of the previous transcript -- that having been on April 23rd of 2019 -- advising that there had previously been a prove-up in front of [another district court judge] and a decree at that time was not submitted, but all

the items were agreed to within that transcript except for the calculations of child support. That's what the matter is here for this morning. I understand both counsel want to make a record.

At the request of Andrew's attorney, the record from the April 2019 hearing was received as exhibit 1. Counsel for both parties made arguments and other exhibits were received.

When Ashley was sworn in to testify, she was asked by her attorney if she understood that they were "set for trial today" and they "could've had a day of testimony," but they were asking the district court to "allow" them to proceed with a proposed decree, parenting plan, and arguments. Ashley responded affirmatively.

Following Ashley's testimony, Andrew's counsel asked Andrew whether he understood that they were there for trial, but "given the fact that there's a transcript, and there was an agreement based on information in April of 2019 before [another district court judge], [they were] [t]here just making . . . arguments to the Court with regard to the child support issue." Andrew responded, "Yes." Andrew then began testifying regarding the "agreements that were made in April of 2019" regarding the parenting plan arrangement, his beliefs regarding Ashley's income in 2019, and the large deposits made to Ashley's bank account. Andrew testified that the large deposits led to him previously filing a motion to reopen the evidence. He claimed Ashley was earning "substantially more than $9 an hour" and that he would not have agreed to using "Worksheet 1" had he known that information before entering into the prior agreement. When Andrew continued to testify about how Ashley purchased a home for $350,000 with "no home payment," and "there's a car with no car payment," Ashley's attorney objected, suggesting the testimony went beyond the agreed procedure on how to "go forward."

The district court sustained the objection "to the extent" it wanted to clarify the purpose of the hearing. It stated:

> [A]ll parties are aware of and have reviewed what's been received as Exhibit 1, which is the prior transcript whereby there's already been the opportunity at a trial, and there was a prove-up done on the record. . . . [T]he only thing that was to be submitted after was the calculations, and I understand now that both parties disagree on the calculations. And so the Court's understanding . . . was that we agreed, rather than having a full on trial and putting on witnesses, that it would be by way of argument with regard to the child support calculations. . . . It does appear that [Andrew] has given a lot more testimony, and I know through conversations, [Andrew's counsel], you've advised that there were some different understandings, but my -- what this Court's willing to do is hear the testimony as to his numbers . . . and the argument you want to make with regards to those numbers, and then this Court can make the determination as to what child support will be. If that's not the way your client agrees to have today's hearing, then we --[.]

At that point, Andrew's counsel interrupted the court and responded, "And, Judge, that's understandable, and that's what my client understands. And the long and short of that is . . . [Andrew] is giving an explanation as to why he doesn't agree with the numbers." Andrew's counsel then marked as exhibit 4, Andrew's proposed child support calculation, which included a "Worksheet 1 and a Worksheet 3 for purposes of this hearing."

(b) Ashley's Evidence and Argument

Ashley offered and the district court received exhibits 2 and 3. Exhibit 2 was subsequently renumbered as exhibit 6 since an exhibit received at the February 2022 hearing was already marked and received as exhibit 2. The remarked exhibit 6 represented Ashley's proposed child support calculation. Exhibit 3 was "the parenting plan that [the] parties have agreed upon." Andrew's counsel objected to exhibit 3 only in so far as Andrew wanted the starting time for his summer parenting time to commence in the morning rather than in the afternoon since that was what the parties had been doing.

Ashley's attorney argued that when the matter had been previously set for trial, "[c]oncessions were made on both sides." It was pointed out that at that time, Andrew had supervised parenting time "subsequent to a domestic violence conviction," and that in the children's best interests, the parties reached an agreement, which included using Worksheet 1. Ashley's proposed child support calculation in the present case was determined by "using the income from both parties currently," however, the only documentation received from Andrew was "two pay stubs from September of 2021." Ashley's proposed calculation reflected Ashley's total monthly gross income as $4,166 and Andrew's monthly gross income as $9,276; it resulted in Andrew owing $1,176 per month in child support for the two children.

The district court asked Ashley how much she made in April 2019. Ashley responded that she did not "know exact figures, but very little compared to now." She stated that "the $9 an hour [was] probably [an] accurate average" for work she did "out of [her] home." Ashley testified that she obtained a different job in August 2020, where she "started at $37,000," but had since received two promotions and that her "base today" was "Fifty." Ashley's counsel then stated that Ashley's W-2 reflected that her income in 2021 was $59,000.

(c) Andrew's Evidence and Argument

Andrew's counsel acknowledged that "this matter is a bit of an anomaly in that we've been waiting on a decree . . . since April 23rd of 2019." Counsel acknowledged that the parties originally agreed that child support would be calculated using Worksheet 1, but that was based upon "information or lack of information that was provided to [Andrew] from [Ashley]." "Both parties agreed that the necessary information was going to be provided within a few days, [and] counsel would work together with their clients to come up with a calculation." However, a calculation was not completed "due to the information or lack of information." After receiving "some subsequent and new information" in June 2019, Andrew filed a motion to reopen the evidence due to what he believed were "some tremendous discrepancies and misrepresentations of either [Ashley's] ability to earn, [or] propensity to earn," and it was not known whether "the income that she received was income, a gift, or a loan." Andrew's attorney argued that "[t]hat's been quite a source of contention between the parties."

Andrew's proposed child support calculations, which included Worksheet 1 and Worksheet 3, were received by the district court. The calculations attributed to Ashley $4,954.47 in monthly gross taxable income and $1,187 in monthly tax-exempt income. It reflected Andrew's gross monthly income as $9,814. Worksheet 1 showed $1,065 per month owed by Andrew in child support for two children, and Worksheet 3 showed $91 per month owed.

## 5. DISTRICT COURT'S DECREE

On July 8, 2022, the district court entered an order consistent with the parties' initial agreement on all matters as described during the 2019 hearings, including the use of Worksheet 1 to calculate child support. The court attached and incorporated into the decree Andrew's proposed child support calculation which reflected Andrew owing $1,065 per month in child support for two children; $706 for one child. The order stated that "having reviewed the income of both parties and exhibit 1 [record of April 2019 hearing] has determined the deviation is in the best interests of the children."

Andrew appeals.

## III. ASSIGNMENTS OF ERROR

Andrew assigns that the district court abused its discretion when it (1) improperly calculated Ashley's income and failed to make specific findings as to why it deviated from the child support guidelines, (2) failed to "reopen the matter for trial, refraining from acting within its equitable authority pursuant to Neb. Rev. Stat. § 25-2001(4)," and (3) enforced portions and not all of the agreement, unfairly prejudicing Andrew.

## IV. STANDARD OF REVIEW

An appellate court reviews child support cases de novo on the record, and will affirm the trial court's decision in the absence of an abuse of discretion. *State on behalf of A.E. v. Buckhalter*, 273 Neb. 443, 730 N.W.2d 340 (2007).

## V. ANALYSIS

### 1. CHILD SUPPORT DETERMINATION

Andrew challenges two aspects of the district court's determination of child support: (1) its calculation of Ashley's income and (2) its failure to make specific findings as to why it deviated from the child support guidelines.

### (a) Calculation of Ashley's Income

As noted previously, the district court adopted Andrew's proposed child support calculations, which reflected $4,954.47 in monthly gross income for Ashley, plus $1,187 in tax-exempt income. Despite the court adopting his proposed child support calculation, Andrew argues that the court should have considered the large deposits to Ashley's bank account, as well as any other deposits to her account identified as "non income" and "personal loan(s)," as part of her income. Brief for appellant at 9. He contends that they were in-kind benefits from her employer.

However, there was also evidence indicating that the largest deposits were personal loans from a third party for a home ($325,000 in May 2019) and for a vehicle ($51,000 in July 2019). It was certainly within the district court's discretion to conclude these were loans rather than income or in-kind benefits from Ashley's employer. Other deposits were marked with various explanations indicating they were money transfers via "Venmo," or travel reimbursement, or income from employment. It was not an abuse of discretion for the court to reject inclusion as income for child support purposes any of the deposits identified as "non income" by Ashley.

- 6 -

(b) Use of Worksheet 1

Andrew claims the district court erred by failing to make specific findings regarding its deviation from the child support guidelines. He also contends the court abused its discretion by using Worksheet 1 when the parties were awarded joint physical custody.

While Andrew is correct that there is a rebuttable presumption that child support will be calculated using Worksheet 3 when joint physical custody is awarded, a trial court may deviate from the guidelines whenever the application of the guidelines in an individual case would be unjust or inappropriate. See *Lasu v. Issak*, 23 Neb. App. 83, 868 N.W.2d 79 (2015). Here, the court found that the parties agreed to a deviation, which it determined was in the best interests of the children considering the income of the parties.

The record reflects that Andrew agreed to use Worksheet 1 to calculate child support when the parties were engaged in negotiations to resolve the case in April 2019. Had a decree and a child support calculation been timely submitted to the district court as the parties agreed to do, Worksheet 1 would have been used. The district court's decision to enforce the prior agreement was not an abuse of discretion and the court's stated reasons for using Worksheet 1 are sufficient to support its decision. We find no abuse of discretion related to the court's determination of child support.

2. FAILURE TO REOPEN MATTER FOR TRIAL

Andrew contends the district court abused its discretion by not reopening the matter for trial and refraining from acting within its equitable authority. In his summary of arguments, Andrews claims the court erred in "not reopening the trial evidence to allow Andrew to show that Ashley fraudulently withheld and misrepresented her income for child support purposes." Brief for appellant at 8. He argues:

A few short weeks after the parties entered into their agreement, Andrew became aware of newly discovered material evidence. This evidence was discovered within the Court's term and prior to a decree being entered. The District Court erred when it disallowed Andrew to reopen this matter and provide evidence. The District Court set the matter for Trial and then indicated it would be following the transcript of the April 2019 hearing held before [the court] but would allow counsel to make a record given the calculations of child support were the lone issue.

*Id.* at 13-14.

Andrew once again takes issue with the district court failing to incorporate all of Ashley's income and "in disallowing the matter to proceed to trial." However, as previously addressed, the record shows the parties agreed to proceed on July 6, 2022, by relying upon the April 2019 record for all matters in the decree, aside from the child support calculation, for which additional evidence was permitted. Andrew cannot now complain of the manner in which the court handled the July 6 hearing, particularly when evidence was adduced regarding the parties' employment incomes, along with the evidence related to Ashley's deposits of large sums of money. It was those various large deposits that were at the root of Andrew's arguments related to determining Ashley's income for purposes of child support. Andrew did in fact have an opportunity to present evidence and

make arguments to the district court on the issue of Ashley's income, and it was entirely within the court's discretion to reject them.

### 3. PARTIAL ENFORCEMENT OF AGREEMENT

Andrew assigns that the district court "abused its discretion in enforcing portions and not all of an agreement, unfairly prejudicing [Andrew] resulting in a decision which was untenable, thereby unfairly depriving [Andrew] of his substantial right and just result." Brief for appellant at 5. However, he fails to provide any details or make any argument in his brief related to this claim. We therefore need not address this assignment of error. See *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

## VI. CONCLUSION

Finding no abuse of discretion by the district court in determining child support, we affirm the district court's July 8, 2022, decree.

AFFIRMED.