IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

PATUBO V. HEALTH CAROUSEL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LADYAN PATUBO, APPELLANT,

V.

HEALTH CAROUSEL, LLC, APPELLEE.

Filed January 13, 2026.    No. A-25-364.

Appeal from the Nebraska Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Ladyan Patubo, pro se.

Jenna M. Christensen, of Engles, Ketcham & Olson, P.C., for appellee.

RIEDMANN, Chief Judge, and PIRTLE and FREEMAN, Judges.

RIEDMANN, Chief Judge.

### INTRODUCTION

Ladyan Patubo was working as a registered nurse for a medical center through Health Carousel, LLC, a staffing agency, when she sustained an injury to her right wrist. After filing a claim against Health Carousel in the Nebraska Workers' Compensation Court, she was awarded temporary disability benefits and past medical expenses; however, she was denied permanent partial disability benefits and future medical care expenses. Patubo appeals, assigning that the compensation court erred by relying on biased medical expert testimony and basing its award upon insufficient evidence. For the following reasons, we affirm.

### BACKGROUND

Patubo was working as a nurse at a medical center on May 8, 2021, when she was lifting a patient and felt mild pain in her right wrist area. She continued working until May 22, at which

- 1 -

time her wrist became very swollen and painful. She treated at urgent care and with her primary care physician. Records from her initial visit indicate that Patubo had presented with a "new onset pain and swelling of the right wrist" that had started the day before. Her primary care physician diagnosed her with a wrist sprain and advised her to take a week off from work, which she did.

When Patubo returned to work on May 31, 2021, she still had "some very mild pain" but continued to perform her regular duties and responsibilities. She noticed her symptoms worsen and she felt a stabbing, piercing, electric sensation in her right wrist. Patubo worked until June 1, 2021, but due to the pain, this was her last day of employment.

Medical records show Patubo returned to urgent care on June 3, 2021, complaining of wrist pain, but no swelling of the wrist or hand was observed. Patubo was advised to not use her right hand and to wear a wrist brace. She began predominantly using her left hand and arm.

In July 2021, Patubo began to feel "pins and needles," pain, and an electric sensation radiating from her shoulders to her neck, and then to her head. Patubo was referred to and saw multiple additional physicians regarding her pain, including Dr. John Massey, who worked at the pain management clinic in the medical center at which Patubo had been employed. Patubo was referred to Massey for evaluation of complex regional pain syndrome (CRPS).

Massey determined Patubo's symptoms were "unequivocally not CRPS of the upper extremity," as she lacked the combination of objective and subjective findings that would support such a diagnosis. He further noted that it seemed that she did not have carpal tunnel syndrome or median neuropathy at the wrist. Rather, Massey observed that it appeared Patubo's symptoms were not "particularly anatomic in nature" but that she appeared to have a lot of "anxiety fear avoidance about activity" and the "widening and migratory nature of the [tingling or electric-shock-like] sensation" indicated that there was no specific injury but rather a "more widespread pain pattern that would be difficult to causally relate to the specific incident with the initial forearm swelling."

Massey ordered an MRI of Patubo's cervical spine, which was completed in December 2021. The results showed that Patubo had a "broad based C5/C6 disc bulge," moderate to serve "central canal narrowing," and additional mild degenerative changes. Massey opined that Patubo's "distribution of pain [did] not closely fit the findings seen" and that the degenerative nature of "C5-6" would be expected to predate the May injury. Additionally, nerve conduction studies did not show that the issues with Patubo's spinal discs were causing a pinched nerve that would cause pain corresponding with her symptoms. Massey expressed that there was no correlation between the "anatomic abnormalities in the cervical spine" and Patubo's symptoms.

In February 2022, Patubo did not feel physically ready to return to work because she still had "pins and needles," pain, and electric sensations from her fingers, hand, and wrist, which went up her shoulders, neck, and the back of her head. She also was experiencing dizziness.

Because workers' compensation benefits were stopped on February 1, 2022, and she could not afford to live independently, Patubo moved from Nebraska to California to live with her sister. Upon moving to California, Patubo began seeing a new primary care physician to address her continued symptoms. She was again referred to numerous specialists for further testing.

A cervical MRI in June 2023 showed "multilevel degenerative changes" in Patubo's spine. There was, however, no indication of high-grade stenosis or acute cord compression, but there was mild "neural foraminal stenosis." Also, neurological examinations performed in June, September, or November 2023, did not reveal evidence of cervical myelopathy. Nerve conduction studies and

electromyography testing in January 2024 produced normal results and there was "[n]o evidence of peripheral nerve compression or discrete radiculopathy."

Patubo requested a second opinion from a neurologist at University of California San Diego. However, after her appointment with the second neurologist, she reported she felt that he was dismissive and requested a new physician. Subsequent medical records revealed that Patubo felt dismissed by the USCD neurologist because he told her to consult a psychiatrist and implied that she did not have a "real condition." The records also note she was referred to behavioral health in April 2024 after another physician found that most of her symptoms were non-specific and "very likely related to a somatization disorder."

According to Patubo, however, her symptoms worsened over time. She was prescribed a walker in August 2023 and eventually became wheelchair bound in approximately June 2024. She had become dizzy and was unable to perform activities of daily living. In May 2024, Patubo moved to a nursing home.

Patubo was also referred to a rheumatologist to address her "chronic joint pains and neuropathy." In June 2024, a rheumatologist performed a CT scan of Patubo's cervical and lumbar spine, which revealed "minimal to mild degenerative changes but no canal stenosis or neuroforaminal narrowing, no fractures to explain symptoms." A progress note stated that, in December, Patubo was observed being able to walk independently with a walker and transfer herself out of bed.

Alexander Caligiuri, D.C., a qualified medical examiner, performed an "independent medical legal evaluation" in February 2025. Caligiuri stated that he had reviewed a plethora of Patubo's medical records and reports and performed his own physical examination. He ultimately opined, "with reasonable medical probability," that, in addition to sustaining an injury in the course of her employment on May 8, 2021, Patubo also sustained a "preceding cumulative trauma" to her cervical spine and right wrist, resulting from her work activities as a nurse.

Due to her ongoing medical problems and the cessation of workers' compensation benefits, Patubo filed a workers' compensation claim against Health Carousel. She claimed that as a result of the May 8, 2021 incident, she sustained injuries to her arms, shoulders, neck, and head. She sought a determination of her rights to temporary total disability benefits, medical expenses, vocational rehabilitation benefits, and a finding of the extent of permanent disability and/or loss of earning capacity.

In response, Health Carousel denied that Patubo was suffering from any injury or disease that arose out of or in the course of her employment. It further averred that all bills and disability that may have been incurred were not due to a work-related accident, but rather the result of a preexisting disability and/or a subsequent non-work-related accident or illness.

At the compensation hearing, Patubo presented the evidence referenced above. Health Carousel introduced various exhibits, including records of the amount it had already paid for temporary disability payments to Patubo between June 2021 and February 2022, a record of Patubo's first report of the injury, an "independent medical evaluation" completed by Dr. Ian Crabb in September 2021, Massey's updated expert medical opinion rendered in October 2024, and additional medical records. It did not call any witnesses.

Massey's updated opinion stated that Patubo's complaints of shoulder, head, neck, and upper extremity pain and tingling were not associated with "any injury or identifiable anatomic

findings." He stated "it remain[d] [his] opinion to a reasonable degree of medical certainty that [Patubo] [did] not have any ongoing injury that [was] casually related to the initial inciting event," meaning the injury to her wrist on May 8, 2021.

After the hearing, both parties submitted closing briefs to the court. In her brief, Patubo requested the court determine that she was permanently and totally disabled and award her the corresponding benefits, and also that it award her future medical treatment as recommended by treating physicians.

The compensation court issued an order that found that the opinion of Massey was more persuasive than that of Caligiuri. The court explained that, although Caligiuri opined Patubo's symptoms were attributable to the workplace incident and initial wrist injury, his opinion was based on academic studies that linked symptoms comparable to those experienced by Patubo to tasks that she performed during her employment. Caligiuri's opinion was not supported by any "credible, objective evidence that the work accident actually caused the symptoms described by [Patubo]." On the other hand, Massey's opinion was definitive that Patubo's left arm and neck symptoms were not related to the work injury and this conclusion was supported by objective medical testing.

The compensation court determined that Patubo had suffered a "sprain injury" to her right wrist on May 8, 2021, which was aggravated on May 22, while she was employed by Health Carousel. However, it found Patubo had failed to provide sufficient evidence to support her claim that she suffered an "overuse injury" to her "left upper extremity" after being restricted from using her right hand, which subsequently progressed to a cervical injury and ultimately rendered her completely incapacitated. Rather, the court determined that Patubo had not sustained any permanent impairment to her "right wrist or right upper extremity" as a result of the work accident and was consequently not entitled to permanent disability benefits. Also, because Massey had not indicated that Patubo was in need of any further medical treatment for her wrist injury, the court found she was not entitled to future medical care.

Patubo was awarded temporary disability benefits for the timeframe between June 2, 2021, and January 5, 2022. The court reasoned that she had stopped working June 1, 2021, and that she had reached maximum medical improvement for her wrist injury as of January 5, 2022, the date of her last appointment with Massey. The court also required Health Carousel pay Patubo's outstanding medical expenses accrued between May 8, 2021, and January 5, 2022, as they were "fair and reasonable and casually related to the May 8, 2021, work injury." It gave Health Carousel credit for the disability benefits and medical expenses it had already paid. Patubo now appeals.

ASSIGNMENTS OF ERROR

Patubo assigns, restated, that the compensation court erred by (1) following Massey's medical opinion because he was a doctor chosen by Health Carousel and (2) relying on insufficient evidence in its award.

STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2021), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3)

there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Duenas v. Papillion Foods*, 32 Neb. App. 899, 6 N.W.3d 807 (2024).

ANALYSIS

Although Patubo assigns as error that the compensation court relied upon Massey's biased opinion and insufficient evidence in its award, her corresponding argument consists of essentially two sentences. She argues that "[c]ritical documents substantiating [her] injuries were inexplicably omitted, while a demonstrably doubtful progress note was improperly included, distorting the medical picture presented" and "[she] raises serious concerns about the partiality of medical evaluations conducted by physicians affiliated with [Health Carousel], arguing that these relationships create an unacceptable risk of bias." Brief for appellant at 7.

Patubo's argument section of her brief does not identify which part of the court's 31-page award she takes issue with and does not explain why or how the court's award was flawed or what it should have done differently. She also does not identify which "critical documents" were, nor what "progress note" was, "inexplicably omitted." *Id*. Although she assigns that the court "erred by following the doubtful document and partial medical opinion by the [sic] Dr. Massey a doctor chooses [sic] by the appellee," she does not mention Massey by name in her argument section, nor does she identify what "doubtful document" she is referring to. *Id*. at 3. She also does not identify which "medical evaluations" presented a risk of partiality. *Id*. at 7. We note that nowhere in her entire brief does she make any citations to the record.

Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, it fails to satisfy the requirement that for an alleged error to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief. *132 Ventures v. Active Spine Physical Therapy*, 318 Neb. 64, 13 N.W.3d 441 (2024). An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it. *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020). Depending on the particulars of each case, failure to abide by the rules of the Nebraska Supreme Court may result in an appellate court waiving the error, proceeding on a plain error review only, or declining to conduct any review at all. *Quiles v. Collazo*, 33 Neb. App. 180, 12 N.W.3d 518 (2024). Because we find that Patubo's assigned errors are insufficiently argued on appeal, we proceed on a plain error review only.

To recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act. See *Duenas, supra.* If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Id*. Here, Patubo had the burden to show that her totally incapacitating shoulder, head, neck, and upper extremity pain, tingling, and numbness was casually related to her employment.

As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id*. The rule in this jurisdiction is that triers of fact are not required to take the opinions of experts as binding on them. *Id*. It is the role of the compensation

court as the trier of fact to determine which, if any, expert witnesses to believe. *Id*. Although Patubo provided a medical opinion from Caligiuri, the compensation court found it lacked foundation, was not supported by objective evidence, and declined to accept it. Rather, it found Massey's medical opinion was more credible and reliable.

Massey's opinion that Patubo's complaints of shoulder, head, neck, and upper extremity pain, tingling, numbness, etc., were unrelated to the wrist injury that occurred during the course of her employment with Health Carousel was supported by the results of objective testing, which indicated that Patubo's cervical spine abnormalities predated the wrist injury and that her subjective complaints were inconsistent with the lack of identified anatomic abnormalities. Several other physicians who examined Patubo expressed concerns regarding a somatization disorder, based upon the lack of objective signs that could be correlated with her symptoms.

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Id*. In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id*.

The compensation court's order awarded Patubo benefits for the period for which she sought treatment for the initial wrist injury, but denied benefits for the period in which she sought treatment for the shoulder, head, neck, and upper extremity pain, tingling, and numbness. Because Massey's expert opinion supported this award, we find no plain error.

CONCLUSION

For the foregoing reasons, we affirm the award of the workers' compensation court.

AFFIRMED.